Fuld, J.
The defendants, Mr. and Mrs. Stover, residents of the City of Bye since 1940, live in a 2%-story 1-family dwelling, located in a pleasant and built-up residential district, on the corner of Bye Beach and Forest Avenues. A clothesline, filled with old clothes and rags, made its first appearance in the Stovers’ front yard in 1956 as a form of 11 peaceful protest” against the high taxes imposed by the city. And, during each of the five succeeding years, the defendants added another clothesline to mark their continued displeasure with the taxes. In 1961, therefore, six lines, from which there hung tattered clothing, old uniforms, underwear, rags and scarecrows, were strung across the Stovers’ yard — three from the porch across the front yard to trees along Forest Avenue and three from the porch across the side yard to trees along Bye Beach Avenue.
In August of 1961, the city enacted an ordinance prohibiting the erection and maintenance of clotheslines or other devices *465 for hanging clothes or other fabrics in a front or side yard abutting a street (General Ordinances, § 4^3.7). However, the ordinance provides for the issuance of a permit for the use of such clotheslines if there is “ a practical difficulty or unnecessary hardship in drying clothes elsewhere on the premises ’ ’ and grants a right of appeal to the applicant if a permit is denied.[1]
Following enactment of the ordinance, Mrs. Stover, the record owner of the property, applied for a permit to maintain clotheslines in her yard. Her application was denied because, she was advised, .she had sufficient other property available for hanging clothes and she was directed to remove the clotheslines which were in the yards abutting the streets. Although no appeal was taken from this determination and no permit ever issued, the clotheslines were not removed. Belying upon the ordinance, the city thereupon charged the defendants with violating its provisions. They were tried and convicted and their judgments of conviction have been affirmed by the County Court of Westchester County. Upon the trial the defendant Webster Stover disputed the sufficiency of the evidence to connect him with the erection or maintenance of the clotheslines but he does not do so here, urging instead that the ordinance, as it has been applied to him and his wife, is unconstitutional both as an interference with free speech and as a deprivation of property without due process.[2]
*466 It is a fair inference that adoption of the ordinance before us was prompted by the conduct and action of the defendants but we deem it clear that, if the law would otherwise be held constitutional, it will not be stricken as discriminatory or invalid because of its motivation. (Of. Town of Hempstead v. Goldblatt, 9 N Y 2d 101, affd. 369 U. S. 590.) Our problem, therefore, is to determine whether the law violates First Amendment rights or otherwise exceeds the police power vested in a city on the ground that it was enacted without regard to considerations of public health, safety and welfare.
The People maintain that the prohibition against clotheslines in front and side yards was ‘ ‘ intended to provide clear visibility at street corners and in driving out of driveways, and thus avoid and reduce accidents; to reduce distractions to motorists and pedestrians; and to provide greater opportunity for access in the event of fires ”. Although there may be considerable doubt whether there is a sufficiently reasonable relationship between clotheslines and traffic or fire safety to support an exercise of the police power, it is our opinion that the ordinance may be sustained as an attempt to preserve the residential appearance of the city and its property values by banning, insofar as practicable, unsightly clotheslines from yards abutting a public street. In other words, the statute, though based on what may be termed aesthetic considerations, proscribes conduct " which offends sensibilities and tends to debase the community and reduce real estate values.
There are a number of early decisions, both in this State (see People ex rel. Wineburgh Adv. Co. v. Murphy, 195 N. Y. 126) and elsewhere (see, e.g., Varney & Green v. Williams, 155 Cal. 318; City of Chicago v. Gunning System, 214 Ill. 628; City of Passaic v. Paterson Bill Posting Adv. & Sign Painting Co., 72 N. J. L. 285; Bryan v. City of Chester, 212 Pa. 259), which hold that aesthetic considerations are not alone sufficient to justify exercise of the police power. But since 1930 this court has taken pains repeatedly to declare that the issue is an open and “ unsettled ” one in New York. (People v. Rubenfeld, 254 N. Y. 245, 248-249; see, also, Perlmutter v. Greene, 259 N. Y. 327, 332; New York State Thruway Auth. v. Ashley Motor Ct., 10 N Y 2d 151, 156-157.) In addition, we have actually recognized the governmental interest in preserving the appearance *467 of the community by holding that, whether or not aesthetic considerations are in and of themselves sufficient to support an exercise of the police power, they may be taken into account by the legislative body in enacting laws which are also designed to promote health and safety. (See, e.g., Matter of Wulfsohn v. Burden, 241 N. Y. 288, 303; Dowsey v. Village of Kensington, 257 N. Y. 221, 230; Perlmutter v. Greene, 259 N Y. 327, 331-332, supra; Baddour v. City of Long Beach, 279 N. Y. 167, 174; Matter of Presnell v. Leslie, 3 N Y 2d 384, 389; New York State Thruway Auth. v. Ashley Motor Ct., 10 N Y 2d 151, 157, supra.) 11 .¿Esthetic considerations ”, this court wrote in Dowsey v. Village of Kensington (257 N. Y. 221, 230, supra), “ are, fortunately, not wholly without weight in a practical world.” Once it be conceded that aesthetics is a valid subject of legislative concern, the conclusion seems inescapable that reasonable legislation designed to promote that end is a valid and permissible exercise of the police power. If zoning restrictions “ which implement a policy of neighborhood amenity ” are to be stricken as invalid, it should be, one commentator has said, not because they seek to promote “ aesthetic objectives ” but solely because the restrictions constitute 1 ‘ unreasonable devices of implementing community policy.” (Dukeminier, Zoning for Aesthetic Objectives: A Reappraisal, 20 Law & Contemp. Prob. 218, 231.) Consequently, whether such a statute or ordinance should be voided should depend upon whether the restriction was “ an arbitrary and irrational method of achieving an attractive, efficiently functioning, prosperous community — and not upon whether the objectives were primarily aesthetic.” (Dukeminier, loo. cit.) And, indeed, this view finds support in an ever-increasing number of cases from other jurisdictions which recognize that aesthetic considerations alone may warrant an exercise of the police power. (See, e.g., Berman v. Parker, 348 U. S. 26, 33; General Outdoor Adv. Co. v. Department of Public Works, 289 Mass. 149, 187-188, app. dsmd. 297 U. S. 725; Sunad, Inc., v. City of Sarasota, 122 So. 2d 611 [Fla.]; State ex rel. Civello v. New Orleans, 154 La. 271, 284-285; Best v. Zoning Bd. of Adjustment, 393 Pa. 106, 116-117; State ex rel. Saveland Park Holding Corp. v. Wieland, 269 Wis. 262, 271-272, cert. den. 350 U. S. 841; Churchill & Tait v. Rafferty, 32 P. I. 580, app. dsmd. 248 U. S. 591; see, also, 8 McQuillin, Municipal *468 Corporations [3d ed.], § 25.31.) As Mr. Justice Douglas, writing for a unanimous court in Berman, put it (348 U. S., at p. 33) :
“ The concept of the public welfare is broad and inclusive. * * * The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled. * * * If those who govern the District of Columbia decide that the Nation’s Capital ■should be beautiful as well as sanitary, there is nothing in the Fifth Amendment that stands in the way.”
Cases may undoubtedly arise, as we observed above, in which the legislative body goes too far in the name of aesthetics (cf. Matter of Mid-State Adv. Corp. v. Bond, 274 N. Y. 82; Dowsey v. Village of Kensington, 257 N. Y. 221, supra; Dukeminier, Zoning for Aesthetic Objectives: A Reappraisal, 20 Law & Contemp. Prob. 218, 231) but the present, quite clearly, is not one of them. The ordinance before us is in large sense regulatory rather than prohibitory. It causes no undue hardship to any property owner, for it expressly provides for the issuance of a permit for clotheslines in front and side yards in cases where there is practical difficulty or unnecessary hardship in drying .clothes elsewhere on the premises. Moreover, the ordinance imposes no arbitrary or capricious standard of beauty or conformity upon the community. It simply proscribes conduct which is unnecessarily offensive to the visual sensibilities of the average person. It is settled that conduct which is similarly offensive to the senses of hearing and smell may be a valid subject of regulation under the police power (see, e.g., People v. Rubenfeld, 254 N. Y. 245, supra), and we perceive no basis for a different result merely because the sense of sight is involved.
Nor is there any warrant or justification for a charge — which seems to have been abandoned on this appeal — that the ordinance is being enforced solely against the defendants or that there is a pattern of discrimination consciously being practiced against them. As the court below noted, the building superin *469 tendent testified, without contradiction, that all applications for permits were checked and investigated, that other applications for permits had been denied and that the defendants were the only persons who refused to remove clotheslines violative of the ordinance.
Having concluded that the ordinance here in question is validly grounded on a proper exercise of the police power, we turn to the defendants’ principal contention, that it is invalid as applied to them because it constitutes an unconstitutional infringement of their freedom of speech. The defendants erected the six clotheslines on their property as a protest against their tax assessment. This form of nonverbal expression is, we shall assume, a form of speech within the meaning of the First Amendment. (See Stromberg v. California, 283 U. S. 359, 369 [exhibition of red flag]; Board of Educ. v. Barnette, 319 U. S. 624, 632-633 [flag salute]; Garner v. Louisiana, 368 U. S. 157, 201 [sit-in demonstration] [per Hablait, J., concurring].) However, it is perfectly clear that, since these rights are neither absolute nor unlimited (see, e.g., Kovacs v. Cooper, 336 U. S. 77; Chaplinsky v. New Hampshire, 315 U. S. 568; Stromberg v. California, 283 U. S. 359, 368, supra; Gitlow v. New York, 268 U. S. 652), they are subject to such reasonable regulation as is provided by the ordinance before us. Although the city may not interfere with nonviolent speech, it may proscribe conduct which incites to violence or works an injury on property, and the circumstance that such prohibition has an impact on speech or expression, otherwise permissible, does not necessarily invalidate the legislation.
It must be borne in mind that the ordinance here in question is, in the language of a recent Supreme Court case (Edwards v. South Carolina, 372 U. S. 229, 236), a “ precise and narrowly drawn regulatory statute evincing a legislative judgment that certain specific conduct be limited or proscribed.” (See, also, Schneider v. State, 308 U. S. 147, 160-161.) As the court aptly observed in the Schneider case (308 U. S. 147, 160-161, supra), “ a person could not exercise [his freedom of speech] by taking his stand in the middle of a crowded street, contrary to traffic regulations, and maintain his position to the stoppage of all traffic; a group of distributors could not insist upon a constitutional right to form a cordon across the street and to allow no *470 pedestrian to pass who did not accept a tendered leaflet; nor does the guarantee of freedom of speech or of the press deprive a municipality of power to enact regulations against throwing literature broadcast in the streets. Prohibition of such conduct would not abridge the constitutional liberty since such activity bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion.”
This reasoning is equally applicable to the case before us. The prohibition against clotheslines is designed to proscribe conduct which offends the sensibilities and tends to depress property values. The ordinance and its prohibition bear 1 ‘ no necessary relationship ” to the dissemination of ideas or opinion and, accordingly, the defendants were not privileged to violate it by choosing to express their views in the altogether bizarre manner which they did. It is obvious that the value of their ‘ ‘ protest ’ ’ lay not in its message but in its offensiveness.
The judgment appealed from should be affirmed.

. The full text of the ordinance reads in this way (General Ordinance, § 4-3.7):
“ Clothes lines. No clothes lines, drying racks, poles or other similar devices for hanging clothes, rags or other fabrics shall be erected or maintained in a front yard or side yard abutting a street. If there is a practical difficulty or unnecessary hardship in drying clothes elsewhere on the premises, a permit shall be issued by the City Clerk permitting the use of said front or side yard for such purpose upon approval of and a finding by the Building Inspector that drying of clothes elsewhere on the premises would create a practical difficulty or unnecessary hardship. If a permit is denied, the applicant may appeal to the Board of Appeals of this city. The provisions of this section shall be applicable to existing conditions.”

. We merely note that the proof of Mr. Stover’s participation is more than ample to support the conviction. He not only acknowledged, at a public hearing before the Rye City Council, that he had erected the lines as a protest against his taxes and was leaving them there “ until he got some action on his assessment” but he alleged the same thing in a complaint in a declaratory judgment action which he and his wife had instituted against the city.