STATE OF HAWAII *v.* DIAMOND MOTORS, INC.
and STATE OF HAWAII *v.* GLENN
D. ALEXANDER, dba NEON HAWAII.

No. 4592.

June 28, 1967.

Richardson, C.J., Mizuha, Marumoto,
Abe and Levinson, JJ.

OPINION OF THE COURT BY LEVINSON, J.

In 1957 the City and County of Honolulu enacted Ordinance No. 1557 which was codified, after the adoption in 1959 of the Charter of the City and County of Honolulu, as Article 26 (Signs Regulations) of Chapter 13 (Regulations Promoting General Welfare) of the Revised Ordinances of Honolulu 1961. The ordinance is comprehensive in nature and provides for the regulation and control of outdoor signs, the location, erection, maintenance and use of signs, and penalties for the violation thereof. It prohibits, among other things, the erection and the maintenance in

industrial districts of ground signs exceeding 75 square feet in area or exceeding 16 feet in height from the ground.[1]

Appellant Alexander is the owner of a ground sign 40 feet high and more than 75 square feet in area, which he installed in 1965 upon the premises of appellant Diamond Motors, Inc., located in an industrial district on the main highway between Honolulu International Airport and downtown Honolulu and the Waikiki beach area. As provided in the ordinance, the City's Building Superintendent gave written notice to appellants to correct the violation by appropriately reducing the area and height of the sign within 20 days. Appellants failed to make the corrections.

Each of the appellants was, thereafter, charged by an information filed August 25, 1965, with a violation of the ordinance and, upon a consolidated trial by jury, was found guilty as charged. Judgments were entered July 13, 1966. Appeals to this court have been consolidated and are based upon the trial court's denial of appellants' written motion to dismiss filed prior to trial

---

[1]Findings and declarations contained in the ordinance include the following:

"(a) That the people of the City have a primary interest in controlling the erection, location and maintenance of outdoor signs in a manner designed to protect the public health, safety and morals and to promote the public welfare; and

"(b) That the rapid economic development of the City has resulted in a great increase in the number of businesses with a marked increase in the number and size of signs advertising such business activities; and

\* \* \* \* \*

"(g) That the natural beauty of landscape, view and attractive surroundings of the Hawaiian Islands, including the City, constitutes an attraction for tourists and visitors; and

"(h) That a major source of income and revenue of the people of the City is derived from the tourist trade; and

"(i) That the indiscriminate erection and maintenance of large signs seriously detract from the enjoyment and pleasure of the natural scenic beauty of the City which in turn injuriously affect the tourist trade and thereby the economic well-being of the City; and

"(j) That it is necessary for the promotion and preservation of the public health, safety and welfare of the people of the City that the erection, construction, location, maintenance of signs be regulated and controlled. (Sec. 13-26.1 R.O. 1957) ."

Permissible ground signs on any lot or parcel of land in industrial districts are limited by the ordinance to "One ground sign, lighted or unlighted, not exceeding 75 square feet in area, relating to businesses conducted on the premises, and not exceeding 16 feet in height from the ground."

and upon the trial court's denial of appellants' oral motion for judgment of acquittal made after the appellee rested in the trial.

Appellants' opening brief presents six questions which are said to be involved in these appeals.[2] In our opinion, the following two of them are without merit: (1) the claim that the provisions of the ordinance regulating non-billboard type of outdoor advertising are ultra vires; (2) the claim that the application of the ordinance to appellants is a denial of free speech in violation of the First Amendment to the Constitution of the United States and of Article I, Section 3, of the Constitution of the State of Hawaii.[3]

We now consider three of the other four questions.

Appellants assert: (1) that the ordinance, including its application to appellants, is based exclusively upon aesthetic considerations; (2) that legislation based exclusively upon aesthetic considerations is outside the scope of police powers and therefore invalid; and (3) that application of the ordinance to appellants constitutes a taking of private property without the payment of compensation in violation of the Fifth Amendment to the Constitution of the United States and Article I, Section 18 of the Constitution of the State of Hawaii.

Appellee disputes the first assertion and argues that the ordinance was enacted for a number of purposes, among which was the preservation of aesthetics as a means to the end of protecting and promoting the general welfare of the people of the City and County of Honolulu, particularly by protecting and promoting the tourist trade and thereby the economic well-being of the City and County of Honolulu.

---

[2]Although some of the questions could obviously apply only to one of the appellants, appellants make no distinctions between themselves.

[3]Cf., Zoning, Aesthetics, and the First Amendment, 64 Colum. L. Rev. 81, which discusses People v. Stover, 12 N.Y.2d 462, 191 N.E.2d 272, appeal dismissed, 375 U.S. 42, 11 L. Ed. 2d 107, 84 S. Ct. 147 (1963). As pointed up in the brief of the Outdoor Circle, Amicus Curiae, "Appellants are not prohibited from erecting outdoor advertising signs. The limitations are only on their number and size. * * * Appellant Diamond Motors, Inc. is not injured by having to compete with its neighbors on equal terms. To hold otherwise is to say that 'the free market place of ideas' is reserved for him who can shout the loudest (or can afford the largest loudspeaker)."

Appellee's answering brief admittedly "does not extend to supporting the proposition that aesthetics alone is a proper objective for the exercise of the City's police power." Perhaps, the "weight of authority" in other jurisdictions persuaded the City to present the more traditional arguments because it felt that it was safer to do so. However, the brief of The Outdoor Circle as amicus curiae presents, as we think, a more modern and forthright position.[4]

We accept beauty as a proper community objective, attainable through the use of the police power. We are mindful of the reasoning of most courts that have upheld the validity of ordinances regulating outdoor advertising and of the need felt by them to find some basis in economics, health, safety, or even morality. *See Thomas Cusack Co.* v. *Chicago,* 242 U.S. 526 (1917). We do not feel so constrained.

Hawaii's constitution provides:

"The State shall have power to conserve and develop its natural beauty, objects and places of historic or cultural interest, sightliness and physical good order, and for that purpose private property shall be subject to reasonable regulation." (Article VIII, Section 5.)

Appellants argue that this constitutional provision has no application to this case because the offending sign is located in an industrial area. We do not agree. The natural beauty of the Hawaiian Islands is not confined to mountain areas and beaches. The term "sightliness and physical good order" does not refer only to junk yards, slaughter houses, sanitation, cleanliness, or incongruous business activities in residential areas, as appellants argue.

The question that we are required to decide is not unlike that presented in *Merritt* v. *Peters,* 65 So. 2d 861 (Florida 1953). In

---

[4]*See* Dukeminer, *Zoning for Aesthetic Objectives: A Reappraisal,* 20 Law & Contemp. Prob. 218, where the author says (p. 237): "* * * Without frank judicial acceptance of beauty as a proper community objective attainable through use of the police power, the maximization of all community values is impossible and ordinances attempting to prevent eyesores generally become makeshift and piecemeal devices."

that case the county commissioners adopted regulations governing the erection of commercial signs and limiting their size. The party involved insisted that the regulation was an arbitrary and unreasonable exercise of the police power by the county. The court said:

> "We have no hesitancy in agreeing with him that the factors of health, safety and morals are not involved in restricting the proportions of a sign board, but we disagree with him in his position that the restriction cannot be sustained on aesthetic grounds alone. In City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364, we think we decided the point contrary to the appellant's view. We held in that case that attractiveness of a community like Miami Beach was of prime concern to the whole people and therefore affected the welfare of all. We think the principle applies to the territory across the bay where the appellant's property is situated. * * *"
> (p. 862.)

*Cromwell* v. *Ferrier,* 225 N.E.2d 749 (New York 1967) upheld the constitutionality of a town zoning ordinance which was a comprehensive and detailed plan for regulation of signs in the township. The court said:

> "* * * Advertising signs and billboards, if misplaced, often are egregious examples of ugliness, distraction, and deterioration. They are just as much subject to reasonable controls, including prohibition, as enterprises which emit offensive noises, odors, or debris. The eye is entitled to as much recognition as the other senses, but, of course, the offense to the eye must be substantial and be deemed to have material effect on the community or district pattern. * * *" (p. 755.)

*Oregon City* v. *Hartke,* 240 Or. 35, 400 P.2d 255, decided in 1965, in holding that an ordinance wholly excluding automobile wrecking yards from Oregon City was a valid exercise of the police power, said:

> "* * * there is a growing judicial recognition of the power of a city to impose zoning restrictions which can be justified

solely upon the ground that they will tend to prevent or minimize discordant and unsightly surroundings. This change in attitude is a reflection of the refinement of our tastes and the growing appreciation of cultural values in a maturing society. The change may be ascribed more directly to the judicial expansion of the police power to include within the concept of 'general welfare' the enhancement of the citizen's cultural life." (pp. 46-47.)

"We join in the view 'that aesthetic considerations alone may warrant an exercise of the police power.' " (p. 49.)

Appellants cite *Puna Sugar Co.* v. *Territory*, 13 Haw. 272, decided in 1901, in support of their position with respect to police power. We think that case is clearly distinguishable on the facts.

We hold that the application of the ordinance to appellants constituted a regulation for the public welfare under the City's police power in a legitimate field for legitimate aesthetic reasons and that it does not constitute a taking of private property without the payment of compensation. *Cromwell* v. *Ferrier, supra,* 225 N.E.2d 749 (New York 1967).

The remaining question raised by appellants is whether the application of the ordinance to appellants is an arbitrary, discriminatory and unreasonable deprivation and denial of due process and equal protection in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 4 of the Constitution of the State of Hawaii.

Appellants argue that "the arbitrary limitation of height and size of signs cannot be considered reasonably necessary and appropriate for the accomplishment of the aesthetic objective set forth in the * * * Ordinance, which seeks to eliminate the 'indiscriminate erection and maintenance of large signs which seriously detract from the enjoyment and pleasure of the natural scenic beauty' of the community."

The City has said through its legislative body that the limitations placed by the ordinance on height and size of signs are necessary. Classifications are obviously required. The burden is upon the appellants to show that the limitations and classifica-

tions are unreasonable. *State* v. *Safeway Stores, Inc.*, 106 Mont. 182, 76 P.2d 81. The record does not so show. Appellants say that whether a classification violates the equal protection clause of the Fourteenth Amendment to the Constitution of the United States is a judicial question. It was incumbent on them in invoking the protection of the Fourteenth Amendment "to show with convincing clarity" that the ordinance created against them the discrimination of which they complain. *Corporation Comm'n* v. *Lowe*, 281 U.S. 431, 74 L. Ed. 945, 50 S. Ct. 397. They have not done so.

Appellants also argue that "the arbitrary and unreasonable restrictions upon size and height * * * are not 'saved' by the provision for 'variance' " because the ordinance does not provide any standard for granting variances. Such an argument is not applicable to this case. The restrictions have not been shown to be arbitrary or unreasonable, and they do not need to be "saved." If the provision for granting variances is invalid it can, because of the severability section of the ordinance, be disregarded. We do not consider it necessary, in this case, to decide whether the provision for granting variances is valid.

The trial court properly denied appellants' written motion to dismiss filed prior to trial and appellants' oral motion for judgement of acquittal made after the appellee rested in the trial.

The judgments are affirmed.

*James G. Jung, Jr. (Greenstein & Cowan* with him on the briefs) for defendants-appellants.

*Richard T. Ishida*, Deputy Prosecuting Attorney *(John H. Peters*, Prosecuting Attorney, with him on the briefs) and

*William H. Yim*, Deputy Corporation Counsel *(Stanley Ling*, Corporation Counsel, with him on the briefs) for plaintiff-appellee.

*J. Garner Anthony and John H. R. Plews (Robertson, Castle & Anthony* on the brief) for The Outdoor Circle, amicus curiae.