Joe DEIMEKE, d/b/a Thompson Auto Sales,
Appellant,

v.

STATE HIGHWAY COMMISSION et al.,
Respondents.

No. 54039.

Supreme Court of Missouri,
Division No. 2.

Sept. 8, 1969.

Hilary A. Bush, Kent Snapp, James L. Burgess, Johnson, Lucas, Bush & Snapp, Kansas City, Jerome W. Seigfreid, Edwards, Seigfreid & Runge, Mexico, for appellant.

Robert L. Hyder, Bruce A. Ring, Jefferson City, for respondents.

FINCH, Judge.

Plaintiff brought a declaratory judgment action asking that an Act of the General Assembly [1] regulating junkyards be declared unconstitutional and that the State Highway Commission be enjoined from enforcing the provisions of the Act. The Circuit Court held the Act to be constitutional as a valid exercise of the police power and

1. S.B. 9, Laws of Missouri, 1965, p. 905, now §§ 226.650–226.720, V.A.M.S.

denied injunctive relief. We have jurisdiction of plaintiff's appeal because of the constitutional issues involved. We affirm.

Plaintiff sought to maintain the suit as a class action. The trial court found that the record did not disclose that plaintiff actually represented a class and consequently held that it was an action on behalf of the plaintiff alone. On appeal, plaintiff does not question this ruling.

The evidence in this case discloses that plaintiff, for a period of eleven or twelve years, has operated a garage, wrecker service and junkyard on a tract of land located on Highway 22, a state primary road, about five miles west of Mexico, Missouri. The tract has a frontage on the highway of one hundred yards and is approximately five hundred yards deep.

On August 4, 1966, shortly before S.B. 9 became effective, the entire frontage of plaintiff's tract was completely screened from the view of persons on the highway by a series of buildings which were twenty to thirty feet high. The east side of the tract was screened for a distance of two hundred feet from the highway by a ten-foot metal fence. On the west side of the tract, a multiflora rose hedge which was in excess of ten feet high extended one thousand feet from the highway. The evidence indicated that travelers on the highway were unable to see any junked automobiles behind the metal fence on the east or behind the multiflora rose hedge on the west, but a traveler could see junked automobiles which were stored on the tract back of the point to where the fence extended on the east and the multiflora rose hedge extended on the west.

Prior to the enactment of S.B. 9, § 229.-180, RSMo 1959, V.A.M.S., provided that no auto wrecking yard or junkyard should be established, maintained or operated within two hundred feet of any state or county road in the state unless screened to a height of ten feet so as to hide the wrecked or disabled automobiles or junk from the view of persons using the highway. In early 1966 the General Assembly repealed that section and enacted in lieu thereof the Act which is now under attack.

The purpose of the new Act is stated in § 226.650, as follows:

"The general assembly, for the purpose of promoting public safety, health, welfare, convenience, and enjoyment of highway travel and to preserve and enhance the natural scenic beauty of highways and adjacent areas, declares it to be in the public interest to regulate and restrict or prohibit the establishment, operation, and maintenance of junkyards in areas adjacent to the interstate and primary systems of highways in Missouri."

Section 226.670 of the new Act provides that no person shall establish or operate a junkyard, any portion of which is within one thousand feet of the nearest edge of the right-of-way of any interstate or primary highway, without first obtaining a license from the State Highway Commission, and confers authority on the Commission to issue licenses. Section 226.680 limits the granting of licenses to four specified categories, and Section 226.690 provides that junkyards "lawfully in existence on August 4, 1966," but which are within one thousand feet of and are visible from the highway, are to be screened, if feasible, by the State Highway Commission at its expense.[2] It also permits the Commission to acquire by condemnation or otherwise all interests in land necessary to secure the relocation, removal or disposal of junkyards when adequate screening of such existing junkyards is not economically feasible or possible.

Plaintiff, under protest, applied on August 2, 1966, to the State Highway Commission for a license for his junkyard. A license was denied and this suit followed.

Plaintiff's first point on appeal is that the Act in question is so vague and

2. The Commission is empowered to acquire such lands or interest in lands as are necessary for such screening.

indefinite as to be incapable of enforcement and hence void. This argument is based on the fact that § 226.670 says that "The state highway commission shall have authority to issue a license for the establishment, operation, and maintenance of junkyards within the limits established in the *preceding* section * * *" (emphasis supplied), whereas, in fact, the preceding section (226.660) contains only definitions of terms used in the Act and provides no limits whatsoever for the issuance of licenses. However, § 226.680, which is the section immediately following § 226.670, provides as follows:

"No license shall be granted for the operation of a junkyard within one thousand feet of the nearest edge of right-of-way of any highway on the interstate or primary system except the following:

"(1) Those screened by natural objects, plantings, fences, or other appropriate means so as to render them not visible from the traveled way of the highway involved;

"(2) Those located within areas which are zoned for industrial use under authority of law;

"(3) Those located within industrial areas determined by the state highway commission from actual land use to be industrial or commercial areas;

"(4) Those not visible from the right-of-way of the interstate or primary system."

The above section does prescribe limits for the issuance of licenses. Four categories are described and the section provides that no license shall be granted except in those four instances.

The general rule, and the one followed in this state, is that verbal inaccuracies or clerical errors or misprints in statutes will be corrected by the court whenever necessary in order to effectuate the clear intent of the Legislature. Thus, in State ex rel. American Mfg. Co. v. Koeln, 278 Mo. 28, 211 S.W. 31, the word "assessor" as used in the statute was construed to mean "collector"; in Frazier et al. v. Gibson, 7 Mo. 271, the word "judgment" was held to mean "assignment"; in Hurley v. Edison, Mo., 258 S.W.2d 607, the word "or" in the statute was interpreted as being intended to be "and"; and in Mignogna v. Chiaffarelli, 151 Mo.App. 359, 131 S.W. 769, the words "execution creditor" were held to mean "execution debtor". See also 82 C.J.S. Statutes § 342, p. 685, and Ronson Patents Corp. v. Sparklets Devices, D.C., 102 F. Supp. 123.

In our view, it is apparent that the General Assembly intended in § 226.670 to refer to limits established in the "succeeding" section rather than in the "preceding" section. So construed, the Act is intelligible and has real meaning, which is in accord with the obvious legislative intent. On the other hand, if the word "preceding" is accepted as being the word intended, the Act is meaningless and its object is frustrated. Accordingly, we overrule this contention by plaintiff.

The basic issue presented by this appeal is whether S.B. 9 is constitutional as a valid exercise of the police power. If it is not, then it would violate constitutional limitations by taking private property for public use without due process of law and without just compensation, in violation of Art. I, §§ 10 and 26, Constitution of Missouri, 1945, V.A.M.S.

In brief, plaintiff asserts that the state seeks by legislative act to take an interest in his property without paying any compensation therefor, that such restriction on use is for aesthetic purposes only, and that such taking cannot be justified as a proper exercise of the police power. On the other hand, the state contends that the taking is only partially for aesthetic reasons and that it has the additional purposes of increasing and promoting the economy of the state, protecting the values of other properties adjacent to the highways, and protecting the investment which the public has made in the highway system.

■ It now is well established that the state, in the exercise of its police power,

may restrict the use of property when reasonably necessary for the promotion of the public health, safety, morals or welfare, "the reason and basis underlying such decisions being that the personal and property rights of the individual are subservient and subordinate to the general welfare of society, and of the community at large, and that a statute or ordinance which is fairly referable to the police power has for its object the 'greatest good of the greatest number.'" Bellerive Inv. Co. v. Kansas City, 321 Mo. 969, 13 S.W.2d 628, 634. This is the basis upon which zoning laws are upheld. State ex rel. Oliver Cadillac Co. v. Christopher, 317 Mo. 1179, 298 S.W. 720. Missouri also has upheld billboard regulations on this ground. St. Louis Gunning Advertising Co. v. City of St. Louis, 235 Mo. 99, 137 S.W. 929; University City v. Diveley Auto Body Co., Mo., 417 S.W.2d 107. The same is true with respect to action by the City of St. Louis in zoning against establishment of a junkyard. City of St. Louis v. Friedman, 358 Mo. 681, 216 S.W.2d 475. However, the courts have protected existing nonconforming uses where they did not constitute a nuisance. Hoffmann v. Kinealy, Mo., 389 S.W.2d 745.

There is no contention asserted in this case that the Act in question was for the protection or promotion of the public health, safety or morals. The question presented, then, is whether the Act is authorized as an exercise of the police power for the promotion of the general welfare. In determining this question, we recognize that the wisdom or expediency of the regulation is for the legislative body, not the courts. Our function is to ascertain whether the Act consists of an exercise of the police power and whether it is arbitrary and unreasonable. State ex rel. Oliver Cadillac Co. v. Christopher, supra; City of St. Louis v. Friedman, supra.

▇ We conclude that S.B. 9 is fairly referable to a reasonable exercise of the police power. Necessarily, what constitutes the general welfare for purposes of exercise of the police power is a changing thing, depending upon the needs at that particular time of the society which it is intended to protect and to promote. It is not static or rigid. This is well expressed in the recent case of Oregon City v. Hartke, 240 Or. 35, 400 P.2d 255, wherein the Supreme Court of Oregon upheld on purely aesthetic grounds an ordinance prohibiting the operation of wrecking yards in Oregon City. The defendant operated such a yard when the ordinance was passed and that operation was permitted to continue as an existing nonconforming use. However, when the operator sought to expand and to extend the yard to contiguous ground, the ordinance was applied. In upholding the constitutionality of the ordinance, the court said, 400 P.2d l. c. 261:

"However, there is a growing judicial recognition of the power of a city to impose zoning restrictions which can be justified solely upon the ground that they will tend to prevent or minimize discordant and unsightly surroundings. This change in attitude is a reflection of the refinement of our tastes and the growing appreciation of cultural values in a maturing society. The change may be ascribed more directly to the judicial expansion of the police power to include within the concept of 'general welfare' the enhancement of the citizen's cultural life. The broadening of the police power in this respect follows the expansion of the police power in other areas of regulation, as the state courts, influenced by Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469 (1934), have exercised greater judicial restraint in passing upon the validity of legislative control of economic interests."

It is true, as plaintiff points out, that earlier Missouri cases stated that aesthetic considerations alone would not justify exercise of the police power, although such factors might be considered along with other things relating to health, safety or morals. City of St. Louis v. Friedman, supra, 216 S.W.2d l. c. 478. Similar views prevailed in many states, although it was arguable that in some of the cases the pre-

dominant reason for the regulation was in fact aesthetic.[3] However, more recently a growing number of cases have recognized a change in the scope of the term "general welfare," as was indicated in Oregon City v. Hartke, supra.[4] In this connection, the recent experiences of our nation, particularly in urban areas, indicate that offensive and unsightly conditions do have an adverse effect on people and that beauty and attractive surroundings are important factors in the lives of the public. The general welfare is promoted by action to insure the presence of such attractive surroundings.

The appearance of property also affects not only its own value but that of surrounding property as well. This was recognized in the case of People v. Stover, 12 N.Y.2d 462, 240 N.Y.S.2d 734, 191 N.E.2d 272, wherein the court upheld the validity of a city ordinance enacted to prohibit the erection and maintenance of clotheslines or other devices for hanging clothes in a front or side yard abutting a street unless authorized by a permit in special circumstances where there would be difficulty in drying clothes elsewhere on the premises. The ordinance was enacted after defendants, as a protest against high taxes, installed clotheslines in their front yard on which they hung items such as tattered clothing, old uniforms, underwear, rags, and scarecrows. In upholding the ordinance as an exercise of the police power, the court said, 240 N.Y.S.2d l. c. 737, 191 N.E.2d l. c. 274:

" * * * Although there may be considerable doubt whether there is a sufficiently reasonable relationship between clotheslines and traffic or fire safety to support an exercise of the police power, it is our opinion that the ordinance may be sustained as an attempt to preserve the residential appearance of the city and its property values by banning, insofar as practicable, unsightly clotheslines from yards abutting a public street. In other words, the statute, though based on what may be termed aesthetic considerations, proscribes conduct which offends sensibilities and tends to debase the community and reduce real estate values."

Property use which offends sensibilities and debases property values affects not only the adjoining property owners in that vicinity but the general public as well because when such property values are destroyed or seriously impaired, the tax base of the community is affected and the public suffers economically as a result.

We note that the Supreme Court of Kentucky recently upheld, largely on aesthetic grounds, a law regulating junkyards along highways in that state. Jasper v. Commonwealth of Kentucky, Ky., 375 S.W.2d 709. That Act was essentially the same as the one which we now consider. The opinion in that case cites and relies on People v. Stover, supra, and then says, 375 S.W.2d l. c. 711: "The police power is as broad and comprehensive as the demands of society make necessary. Farley v. Graney, [146] W.Va. [22], 119 S.E.2d 833. It must keep pace with the changing concepts of public welfare. Certainly the legislature could take cognizance of the developing importance and extensive improvements of Kentucky's highway system, of the actual commercial as well as aesthetic value of our scenic beauty, and of the patently offensive character of vehicle graveyards in close

---

3. Baker, "Aesthetic Zoning Regulations," 25 Michigan Law Review 124; "Constitutional Law—Police Power—Aesthetics as a Basis for the Regulation of Billboards by a Municipal Corporation," 43 University of Missouri Bulletins, Law Series, 41.

4. See, for example, the cases cited in People v. Stover, 12 N.Y.2d 462, 240 N.Y.S.2d 734, 191 N.E.2d 272, 275. See also Duke-minier, "Zoning for Aesthetic Objectives: A Reappraisal," 20 Law and Contemporary Problems 218; "Zoning, Aesthetics and the First Amendment," 64 Columbia Law Review 81; Rodda, "The Accomplishment of Aesthetic Purposes under the Police Power," 27 Southern California Law Review 149; 8 McQuillin, Municipal Corporations, 3rd Ed. 1965 Revised Volume, § 25.31, p. 74.

proximity to such highways." We concur in the view therein expressed.

The Act in question does not undertake to eliminate without compensation any existing lawful nonconforming use. In such instances, any additional screening which is required is to be at the expense of the State Highway Commission. If additional screening is not feasible, provision is made for condemnation which will entail payment of just compensation for rights taken. Insofar as the Act otherwise regulates the use of property by requiring screening of junkyards adjacent to the highway, we hold it to be reasonable and hence a proper exercise of the police power.

 By affirming the judgment herein, we should not be considered as holding that plaintiff did not have a lawful existing nonconforming use on the date S.B. 9 became effective. That was not the issue in this case. The petition sought merely a declaration that S.B. 9 was unconstitutional and void and asked that the Commission be enjoined from enforcing it. Although the petition alleged that plaintiff had been operating the yard in full compliance with the laws of the state, it did not seek a determination that the yard constituted a lawful existing nonconforming use on the effective date of the Act. Nevertheless, the trial court, in its findings of fact and conclusions of law, found that plaintiff's junkyard was not in compliance with the provisions of § 229.180, the section which was applicable on the date S.B. 9 became effective. We find that the evidence in this record does not support such finding and conclusion. The only testimony was that the front of the yard was completely screened by buildings and that one side was screened for a distance of two hundred feet by a ten-foot metal fence, and the other was effectively screened for a distance of one thousand feet by a multiflora rose hedge which was more than ten feet in height. The evidence was that cars behind the buildings, the fence and the hedge could not be seen from the highway right-of-

way. Accordingly, we disapprove of that finding and conclusion of law by the trial court. They are not necessary to the conclusion that the Act is constitutional. For the reasons heretofore stated, we approve and affirm the other findings of fact and conclusions of law.

Judgment affirmed.

MORGAN, J., and PALUMBO, Special Judge, concur.

DONNELLY, P. J., not sitting.