## No. 26784

**Combined Communications Corporation, an Arizona corporation, d/b/a Eller Outdoor Advertising Co. of Colorado, Lon F. Bends, Edythe Smookler and Margaret Katsaros v. City and County of Denver, a municipal corporation, Anthony D. Jansen, and John Stone**

(542 P.2d 79)

Decided November 3, 1975.                    Rehearing denied November 24, 1975.

Davis, Graham & Stubbs, Richard P. Holme; Law, Nagel & Clark, Ralph M. Clark, for plaintiffs-appellees.

Max P. Zall, Robert M. Kelly, John L. Stoffel, Jr., for defendants-appellants.

Phillip Tocker, for amicus curiae Outdoor Advertising Association of America, Inc.

Weil, Lee & Bergin, Gilbert H. Weil, for amicus curiae The Association of National Advertisers, Inc.

Raymond C. Johnson, Patrick J. Burke, for amicus curiae City of Lakewood.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

In 1971 the City and County of Denver enacted two ordinances, numbered 94 and 95. These were a part of the Denver Sign Code. They related to off-premises outdoor advertising, *i.e.*, they did not apply to advertising as it pertains to a business on its own premises. No. 94 in effect prohibited the erection of new outdoor advertising signs. No. 95 required, over a period of time, the removal of existing signs of this character. Combined Communications Corporation (referred to as plaintiff), and persons associated with it in the outdoor advertising business, brought this action in the district court against Denver and two of its officials. The court entered a judgment, in which it ruled that the two ordinances were unconstitutional and in which it permanently enjoined Denver from enforcing them. We affirm.

This matter was before us on an appeal from a preliminary injunction about a year ago in *Combined Communications Corp. v. City & County of Denver,* 186 Colo. 443, 528 P.2d 249 (1974). There we avoided the merits, concluding that any review should follow the completion of a trial on

the constitutional questions and the issue of a permanent injunction.

Such a trial was later held, following which the court made extensive findings of fact and conclusions of law, and decreed that Ordinances 94 and 95, Series of 1971, and Sections 619.270 and 619.396 (provisions contained in Ordinance 90) of the Denver Zoning Ordinance were unconstitutional.[1] It also permanently enjoined the enforcement of those ordinances.

The two ordinances were adopted in 1971, together with five other related ordinances. Ordinance No. 94 repealed certain sections of the Denver Zoning Ordinance, which had allowed "outdoor advertising devices" as a "Use by Right" in certain zone districts and would, except for Ordinance No. 95, result in making the devices non-conforming uses.

No. 95 provided for the elimination of the then existing devices over a period of five years in accordance with an "amortization" schedule depending upon the replacement value of the advertising device. Denver has disavowed any purpose to enforce No. 95 until the end of the 5-year period. Therefore, we treat No. 95 as if all signs are to be eliminated at — and only at — the expiration of that period.

An "outdoor general advertising device" is defined as, "A sign relating to products, services or uses not on the same Zone Lot." Ordinance 90, 1971 Series, § 619.270. "Sign" is defined in the same ordinance as follows:

"Sign: A sign is any object or device or part thereof situated outdoors or indoors which is used to advertise, identify, display, direct or attract attention to any object, person, institution, organization, business, product, service, event or location by any means including words, letters, figures, designs, symbols, fixtures, colors, motion illumination or projected images. Signs do not include the following: (1) Flags of nations or an organization of nations, states and cities, fraternal, religious and civic organization; (2) merchandise, pictures or models of products or services incorporated in a window display; (3) time and temperature devices not related to a product; (4) national, state, religious, fraternal, professional and civic symbols or crests; (5) works of art which in no way identify a product. If for any reason it cannot be readily determined whether or not an object is a sign, the Department of Zoning Administration shall make such determination." §619.396

The combined effect of 94 and 95 would be to eliminate the billboard business in Denver, by enforcing the prohibition against the erection of any new billboards, and by forcing the removal of existing signs.

---

[1] One part of Ordinance 95 (Revised Municipal Code § 617.1-4(6)(b)) provides for a termination, within 30 days, of the right to operate or maintain a "flashing, blinking, fluctuating or animated outdoor general advertising device." The trial court found that, although the 30-day period was challenged as unconstitutional by the Combined Communications, the plaintiffs did not show sufficient standing to attack that provision since they neither have, nor was there any suggestion that they desired to have, such signs. This part of the court's order is unchallenged. For the purpose of this opinion, we treat the portion mentioned in this footnote as if it were not a part of No. 95.

The trial court's order declaring the ordinances unconstitutional was predicated upon several grounds: that Ordinance No. 94 was beyond the scope of authority granted to the Denver City Council by the Denver Charter and was therefore an *ultra vires* act; that the definitions of "outdoor general advertising device" and "sign" contained in the ordinance unconstitutionally delegates legislative authority to the Zoning Administrator; that Ordinances 94 and 95 constitute a taking of property without just compensation violative of the Fifth Amendment of the United States Constitution and of Article II, Section 15 of the Colorado Constitution; that Ordinance 95 violates state law on a matter of state-wide concern; and, finally, that Ordinances 94 and 95 violate the plaintiffs' freedom of speech.

Any express authorization for Denver to act in this area is to be found in the following provision of Denver's charter:

"For the purpose of promoting health, safety, morals or the general welfare of the community, the council of the City and County of Denver is hereby empowered to *regulate and restrict* the height, number of stories and size of buildings and other structures, the percentage of a lot that may be occupied, the size of yards, courts and other open spaces, the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes.'' Section B1.13 [Emphasis added]

We are predicating our ruling in this opinion (1) upon the trial court's first conclusion above, that there was not authority to adopt No. 94, and (2) upon the inescapable conclusion that, if 94 fails, 95 must also.

Prior to a discussion of our ruling, however, we wish to mention the argument which has been made with great emphasis by and in behalf of Denver: the contention that these ordinances are justified under the *police power*, irrespective of the extent of Denver's power to regulate and restrict under the zoning provisions of the Denver charter.

█ Although we agree that, under its police power, there are situations in which a government may deprive the owner of a certain use of property and not be in violation of the Fifth Amendment prohibition against taking private property without just compensation, *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), nevertheless, there must be a recognition that that exercise of the police power can only be valid under — and only under — a standard of reasonableness. *Goldblatt v. Hemstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962).

Our ruling in this case, as to whether Denver's charter power to regulate gives it the power to prohibit, must be premised upon a concept of reasonableness. Therefore, whether one proceeds under a "police power" argument or under a "regulatory" argument, one proceeds down the same path — that of reasonableness.

Addressing the core question, initially we should pinpoint the nature of the matter being prohibited and the territorial extent of the prohibition. The nature of the thing is that the outdoor advertising industry here in-

volved is a separate and distinct industry. This conclusion results from our affirmance of the following findings by the trial court:

"The evidence in this case established, beyond any reasonable doubt, that the 'sign industry' is in fact at least two separate and distinct businesses — the on-premise sign business and the off-premise sign business.

\* \* \* \*

"From a functional standpoint the on-premise advertising business and the off-premise advertising business are different in their purposes, their clientele, their sales methods, their production facilities and skills, and their national organizations. Not only are these two businesses functionally different, but historically they have been treated separately under the Denver ordinances. . . ."

There have been cited to us numerous cases of *prohibitions* being affected under *regulatory* authority in a segment or certain segments of a city. A prime example of this is the prohibition of some or all business from residential zones, which in appropriate cases is a legitimate exercise of the police power. *Los Altos Hills v. Adobe Creek Props., Inc.*, 32 Cal. App.3d 488, 108 Cal. Rptr. 271 (1973); *Oregon City v. Hartke*, 240 Or. 35, 400 P.2d 255 (1965). Exclusion of the billboard industry in a predominantly residential community has been upheld. *United Adv. Corp. v. Metuchen*, 42 N.J. 1, 198 A.2d 447 (1964).

■ In contrast, here there is the prohibition of an entire industry throughout the entire area of a major city. Counsel has been bountiful in supplying hundreds of citations of authority. In all of these cases, there is not one that holds that, under the power of regulation, a separate and distinct industry — which does not constitute a public nuisance — can be prohibited throughout an entire city. Here, the court found in effect that outdoor signs were not of themselves a public nuisance, and we approve that finding.

■ Although defendants argue that the billboard business is only one segment of the advertising business and not an industry in itself, the court's findings are well supported by the evidence presented by the plaintiffs, and will not be disturbed on review. *Alcove's, Inc. v. Pehr*, 161 Colo. 268, 421 P.2d 469 (1966); *Wilson v. Girley*, 145 Colo. 135, 357 P.2d 932 (1960).

Further, other courts which have addressed this problem have rejected the argument that the two businesses are simply parts of one industry. *Markham Adv. Co. v. Slate*, 73 Wash.2d 405, 439 P.2d 248 (1968); *United Adv. Corp. v. Raritan*, 11 N.J. 144, 93 A.2d 362 (1952); *Kelbro, Inc. v. Myrick*, 113 Vt. 64, 30 A.2d 527 (1943).

■ Since the outdoor advertising industry is a separate and distinct industry, the effect of Ordinance 94 is to completely prohibit the improvement and extension of that industry in the entire city. Under a concept of reasonableness, the charter authorization of regulation does not permit Denver under its zoning power to prohibit this entire industry.

The trial court based its decision on several cases. One was *General Outdoor Advertising Co. v. Goodman*, 128 Colo. 344, 262 P.2d 261 (1953), in which it was held that the power to regulate does not include "any power, express or inherent, to prohibit." In that case the issue was whether zoning authority given county commissioners to "regulate the size of buildings or structures . . ." allowed the commissioners to pass a zoning resolution which would effectively exclude billboards in Arapahoe County. The enabling legislation allowed commissioners to "regulate." The only difference between the enabling legislation in that case and the charter authorization here is that here the city council is allowed to "regulate and restrict the height, number of stories and size of buildings and other structures. . . ." The city contends that the variation, resulting from the addition of the verb "*restrict*" allows the council to *prohibit*. As was the conclusion of the trial court, we are unable to find any significance here in the addition of the word "restrict." *See also Canon City v. Merris*, 137 Colo. 169, 323 P.2d 614 (1958); *Krier v. Walsenburg*, 26 Colo. App. 150, 141 P. 505 (1914).

Ordinance 95, as limited by footnote 1, because it too has the effect of prohibition of an industry by mandating removal of existing signs throughout the city, is invalid because it is so intertwined with Ordinance 94. If there is no 94, 95 as written in effect becomes inoperative.

Judgment affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE KELLEY dissent.

MR. JUSTICE ERICKSON does not participate.


MR. JUSTICE KELLEY dissenting:

I respectfully dissent. The majority has not addressed what I regard as the real issue in this case: Whether the City in the reasonable exercise of its police power may prohibit the erection of new off-premises, outdoor billboards. It is axiomatic that the City may, in the exercise of its police power, restrict or forbid the erection of particular structures or a particular use, where such restriction or prohibition is not arbitrary and unreasonable and bears a substantial relationship to public health, safety, morals, or general welfare. *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

*Ambler* also held that if the validity of a legislative classification for zoning purposes is fairly debatable, legislative judgment must be allowed to control. We said in *Nopro v. The Town of Cherry Hills*, 180 Colo. 217, 504 P.2d 344 (1973):

"As tempting as it sometimes may be, a court is without power to substitute its zoning philosophy for that of the zoning body; and this is so for practical as well as legal reasons."

The City postured its case to a large extent on the proposition that off-premise billboards created "visual pollution," and hazards to driving safety. The majority ignored this argument, as well as the assignments of error relating to the exclusion of evidence offered to establish the allegations.

The United States Supreme Court, on the matter of aesthetic considerations as a ground for the exercise of the police power, said:

". . . The concept of the public welfare is broad and inclusive. [Cite omitted.] The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled." *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954).

Some of the state courts have recognized that aesthetic considerations alone may form the basis for the valid exercise of the police power. *State v. Diamond Motors, Inc.*, 50 Hawaii 33, 429 P.2d 825 (1967); *Oregon City v. Hartke*, 240 Ore. 35, 400 P.2d 255 (1965); *Jasper v. Commonwealth*, 375 S.W.2d 709 (Ky. 1964); *People v. Stover*, 12 N.Y.2d 462, 191 N.E.2d 272, 240 N.Y.S.2d 734 (1963); *Merritt v. Peters*, 65 So.2d 861 (Fla. 1953).

In order to cope with the problems of environmental deterioration in core cities, the governing bodies of cities must be permitted to take aesthetic values into consideration.

I recognize that the problem of banning outdoor billboards completely is compounded by the existence of conflicting interests and considerations. As pointed out in the majority opinion, the prohibition of outdoor signs would have an adverse effect on the sign business. The majority conclude that it would be destroyed. It, of course, would affect the property owners who lease the sites for the signs, and, perhaps, the businesses which use outdoor signs to advertise their products and services.

Therefore, conflicting with the desire of the Council to promote the aesthetic values of the City, are the various economic interests. These competing values must be balanced in determining reasonableness. Neither the trial court nor the majority attempted to strike a balance.

I would reverse and remand to the trial court to make a determination under the tests suggested herein.

I have nothing to say as to the reasonableness of the amortization ordinance, Number 95, except that amortization has been approved by respectable courts[1] as a valid method of satisfying the "just compensa-

---

[1]*National Adv. Co. v. Monterey*, 1 Cal.3d 875, 83 Cal.Rptr. 577, 464 P.2d 33 (1970); *Naegele Outdoor Adv. Co. v. Minnetonka*, 281 Minn. 492, 162 N.W.2d 206 (1968); *Markham Adv. Co. v. State*, 73 Wash.2d 405, 439 P.2d 248 (1968); *LaChapelle v. Goffstown*, 107 N.H. 485, 225 A.2d 624 (1967); *Moore v. Ward*, 377 S.W.2d 881 (Ky. 1964); *Larchmont v. Sutton*, 30 Misc.2d 245, 217 N.Y.S.2d 929 (1961); *Murphy, Inc. v. Board of Zoning App.*, 147 Conn. 358, 161 A.2d 185 (1960); *Grant v. Baltimore*, 212 Md. 301, 129 A.2d 363 (1950); 2 *Rathkopf, Law of Zoning and Planning* 62-1, et. seq.

tion" requirements of the Fourteenth Amendment. The majority apparently does not reach the issue.

