**KEYAH GRANDE, LLC,**
Plaintiff–Appellant,

v.

**COLORADO DEPARTMENT OF AGRICULTURE; Don Ament, Commissioner of Agriculture; and Colorado Agricultural Commission, Defendants–Appellees.**

No. 05CA0388.

Colorado Court of Appeals,
Div. II.

Oct. 5, 2006.

---

Berenbaum, Weinshienk & Eason, P.C., Michael J. Belo, Denver, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Stephen G. Smith, Assistant Attorney General, Tyson H. Powell, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge HAWTHORNE.

In this case involving the destruction of elk, plaintiff, Keyah Grande, LLC, appeals from a summary judgment in favor of defendants, Colorado Department of Agriculture; Don Ament, Commissioner of Agriculture; and Colorado Agricultural Commission (collectively the Department). We reverse and remand for further proceedings.

I.

In the fall of 2001, the Department identified twenty elk in Keyah Grande's herd that may have been exposed to chronic wasting

disease (CWD). The Department informed Keyah Grande that no tests that could be performed on live elk to determine whether they have CWD, and the herd would have to be destroyed. Keyah Grande and the Department entered into an agreement wherein Keyah Grande would allow the Department to destroy the designated elk, but the parties would continue to negotiate the indemnification amount to be paid to Keyah Grande.

After the elk were destroyed, tests showed that none of the animals was infected with CWD. When the parties could not agree on the indemnification amount to be paid, Keyah Grande filed this lawsuit, alleging, inter alia, that the Department's appraisal was not in conformance with a former version of § 35–50–113, C.R.S.2006, and seeking indemnification for its loss.

The Department filed a C.R.C.P. 12(b)(5) motion to dismiss, which the trial court treated as a motion for summary judgment. The Department maintained that the destruction of the elk was pursuant to the state's police power, and therefore was noncompensable.

The trial court characterized the action as one for inverse condemnation and directed the parties to brief only that issue. After considering the parties' submissions on that issue, the court granted the Department's motion for summary judgment and dismissed the complaint with prejudice. The court found that Keyah Grande had "stated no other claim for relief in this case."

## II.

Keyah Grande contends that the trial court erred in granting summary judgment in favor of the Department and in dismissing Keyah Grande's complaint seeking indemnification. We agree.

### A.

■ We review a trial court's ruling on summary judgment de novo. *Trigg v. State Farm Mut. Auto. Ins. Co.*, 129 P.3d 1099 (Colo.App.2005). Summary judgment is proper if the pleadings, affidavits, depositions, or admissions show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

*Civil Serv. Comm'n v. Pinder*, 812 P.2d 645 (Colo.1991).

■ Statutory interpretation is a question of law that we review de novo. *Colo. State Bd. of Accountancy v. Paroske*, 39 P.3d 1283 (Colo.App.2001). When construing a statute, our goal is to determine and give effect to the intent of the legislature. *Harding v. Heritage Health Prods. Co.*, 98 P.3d 945 (Colo.App.2004). We look to the statutory language, give words and phrases their ordinary meaning, and interpret the statute in a way that best effectuates the purpose of the legislative scheme. *Harding, supra.*

### B.

Initially, we disagree with the trial court's characterization of this case as an inverse condemnation action. *See State v. The Mill*, 809 P.2d 434, 437 (Colo.1991)(quoting *United States v. Clarke*, 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373 (1980), and stating that inverse condemnation is "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted").

In its complaint, Keyah Grande did not seek relief based on inverse condemnation. It alleged a statutory violation, namely, that the destruction and appraisal of its elk was not in compliance with the applicable version of what is now codified as § 35–50–113, C.R.S.2006, which provides:

Condemnation of livestock. (1) Whenever the state veterinarian reports to the [state agricultural] commission that there exists an outbreak of contagious or infectious disease among livestock of this state of such a character as to endanger and imperil the livestock of the state, the commission, upon approval of the governor, may issue an order of condemnation to condemn and destroy any livestock so infected or any livestock that has been exposed to or is deemed by the commission capable of communicating such contagious or infectious disease to other livestock .... Such condemnation and destruction shall take place only when in the opinion of the commission and the governor an emergency exists and

such action is justified and necessary for the safety and protection of the livestock of this state.

(2) Whenever the state agricultural commission finds it necessary to condemn and destroy any animals or property within this state because of any contagious or infectious disease, such animals or property shall not be destroyed until after a fair appraisal has been made of the value of such animals or property by three appraisers, one to be appointed by the state agricultural commission, one by the owner of the property to be destroyed, and the third to be selected by these two. Such appraisers shall make a report to the commission under oath as to their appraisal and the commission shall forward such appraisal to the governor with such recommendation as to the proportion of such appraisement to be considered a just bill against the state of Colorado as the commission may think right.

(3) Any dispute or protest regarding the appraisal shall not delay destruction of the animals or property.

Section 35–50–113 (similar statute formerly codified at § 8511, C.R.S.1963, and at § 35–50–111). For convenience, we will refer to the statute as it is currently codified.

Section 35–50–113(2) clearly requires an appraisal by three appraisers, one appointed by the agricultural commission, one appointed by the owner of the property to be destroyed, and a third to be selected by these two. Section 35–50–113(2) further requires that livestock owners, whose livestock are destroyed pursuant to this statutory scheme, be compensated.

The Department admitted in its brief on appeal and at oral argument that it did not comply with the statute. Its position is that when—as here—it fails to comply with the statute, an owner of livestock has no recourse. The Department further asserts that, despite the requirements of the statute, it was authorized to destroy the elk pursuant to the exercise of its general police power without compensating Keyah Grande, and that even if Keyah Grande's allegations are true, it is not entitled to compensation as a matter of law. We do not agree.

We conclude § 35–50–113 defines the Department's police power regarding an outbreak of contagious or infectious disease among livestock in our state and sets forth the parameters of that power. *See* § 38–1–202, C.R.S.2006 (enacted in 2006; creating a central reference for statutes that authorize the use of the power of eminent domain and not listing § 35–50–113).

Here, it is undisputed that the Department destroyed Keyah Grande's elk to prevent the possible communication of CWD to other livestock but did not comply with the requirements of § 35–50–113. It would lead to an absurd result to allow the Department to ignore the mandatory steps that must be taken when livestock are destroyed and so avoid paying the statutorily required compensation to livestock owners. Cf. *Combined Commc'ns Corp. v. City & County of Denver*, 189 Colo. 462, 465, 542 P.2d 79, 81–82 (1975) (although government may, in some situations, deprive owner of use of property without compensation, exercise of police power is valid only under a standard of reasonableness).

The Department has provided no authority supporting its argument that it has a general common law police power in this area, and we have found no such authority. Indeed, the contrary seems to be the case. *See Dep't of Transp. v. Stapleton*, 97 P.3d 938, 941 (Colo.2004)(party may not condemn private property without demonstration that taking has been statutorily authorized, either expressly or implicitly); *Dep't of Agric. & Consumer Servs. v. Mid–Fla. Growers, Inc.*, 521 So.2d 101 (Fla.1988)(payment of just compensation required for healthy orange trees destroyed pursuant to state's police power); *S.D. Dep't of Health v. Owen*, 350 N.W.2d 48 (S.D.1984)(payment of just compensation required for state's destruction of healthy elk pursuant to police power). *But see Raynor v. Md. Dep't of Health & Mental Hygiene*, 110 Md.App. 165, 676 A.2d 978 (1996) (destruction of healthy ferret pursuant to police power for rabies testing noncompensable).

We therefore conclude that Keyah Grande has stated a claim for a violation of § 35–50–113. Accordingly, we reverse the trial

court's order granting summary judgment in favor of the Department and dismissing Keyah Grande's complaint, and we remand for further proceedings.

Given our conclusion, we need not address Keyah Grande's contention that the trial court erred in dismissing its complaint without allowing it to amend its complaint.

The judgment is reversed, and the case is remanded to the trial court with directions to (1) reinstate Keyah Grande's statutory claim, (2) enter partial summary judgment in favor of Keyah Grande on the Department's liability for compensation, and (3) conduct further proceedings consistent with this opinion and concerning the appraisal of the value of the elk.

Judge ROTHENBERG and Judge ROY concur.