Mary Sings *et al.* Plaintiffs in Error, *vs.* The City of
Joliet, Defendant in Error.

*Opinion filed December 15, 1908.*

1. Nuisance—*power to declare nuisance need not be exercised
by a general ordinance.* A city, under the exercise of its police
power, may, in case of an emergency, pass an ordinance declaring
a particular house which is impregnated with small-pox germs to
be a nuisance, and it is not essential that such power be exercised
by an ordinance purporting to be general in character.

2. Same—*city may declare building to be a nuisance if it is in
fact so.* While the power of a city to declare what shall be a nui-
sance is not arbitrary, yet if a building which is not in itself a
nuisance has, by reason of its locality, surroundings or the manner
in which it is conducted or managed, become a nuisance in fact,
the city has power to declare it to be a nuisance.

3. Same—*a building may be declared to be a nuisance before a
hearing in court is had.* In the exercise of its police power a city
may by ordinance declare a building to be a nuisance and order its
destruction before any hearing is had in court to determine whether
the building was, in fact, a nuisance.

4. Same—*city's determination that a building is a nuisance is
not conclusive.* The determination of a city council that a certain
building is a nuisance is not conclusive of that question, and if the
building is destroyed by the city the owner is entitled to have the
question of nuisance adjudicated in a subsequent action against
the city for damages.

5. Same—*power of a city to destroy building declared to be a
nuisance.* A city is not authorized to destroy a building declared
by ordinance to be a nuisance because of its being impregnated
with small-pox germs, unless the building is so located and in such
condition that the danger to public health therefrom cannot be ob-
viated by the use of measures less drastic than destruction.

6. Same—*city cannot escape liability for destroying a building
by claiming act to be ultra vires.* The declaring and abating of a
nuisance is within the scope of the power conferred upon a city,
and if the city council, in the exercise of such power, destroys or
authorizes the destruction of a building which is not, in fact, a
nuisance, the city is liable for the damages sustained by the owner,
and the doctrine of *ultra vires* affords no defense.

Writ of Error to the Circuit Court of Will county;
the Hon. Frank L. Hooper, Judge, presiding.

On July 11, 1906, Mary Sings, Edith G. Evans, America Miller, Alcyone Lewis, Arvilla A. Withrow and William Bissell, plaintiffs in error, brought an action in the circuit court of Will county against the city of Joliet, defendant in error, for damages for the destruction by defendant in error of an apartment house and its contents owned by plaintiffs in error in said city.

The declaration contains four counts. The first two will not be set out for a reason which appears from the opinion which follows. The third count alleges that on July 11, 1901, the plaintiffs in error were the owners and in possession of a certain lot located in the city of Joliet and a two-story frame building, with appurtenances thereto, located thereon; that at the time aforesaid, and for a long time prior thereto, they had occupied the said frame building as a home and for tenement purposes; that defendant in error at said time, acting by means of the common council, contriving unlawfully to injure the plaintiffs in error in their possession, use, occupation and enjoyment of said premises, on July 8, 1901, passed and enacted a certain ordinance, which, with the title thereof, is in words and figures following:

"An ordinance to condemn as a nuisance the wooden building known as the Bissell House, situate on lot 1, in block 6, in that part of the city known as East Joliet, and to authorize and direct the destruction of the same and its contents.

"*Be it ordained by the city council:*

"Sec. 1. That whereas a certain building known as the Bissell House, situate on lot 1, in block 6, of that part of the city of Joliet known as East Joliet, in the city of Joliet, county of Will and State of Illinois, for some time past has been, and still is, occupied by a large number of persons, all of whom are more or less exposed to, infected by and suffering with the dread contagious and infectious disease known as small-pox; and whereas, the said Bissell

House is now thoroughly impregnated with the germs of said disease; and whereas, the said Bissell House is, by reason of its old age, present state of deterioration and otherwise in such condition that it cannot be successfully disinfected so as to wholly destroy the said germs, in consequence of which it is extremely dangerous and detrimental to the health of the citizens and residents of the said city of Joliet, and that necessity exists for prompt action to prevent the spread of such contagious disease; therefore, and by reason of all of which, the said Bissell House is hereby declared to be a public nuisance and condemned to destruction as such, as hereinafter provided.

"Sec. 2. It shall be the duty of the health commissioner of said city to remove all occupants of said Bissell House to the pest house, or some other place temporarily to be used as a place of isolation, within three days after the adoption and going into effect of this ordinance.

"Sec. 3. That after the removal of the said occupants, as aforesaid, the superintendent of streets, health commissioner and fire marshal of said city shall tear down, or cause to be torn down, the said Bissell House. They shall, moreover, wholly destroy, by fire, all of the debris and contents of said Bissell House impregnated or exposed to impregnation with the germs of said disease and not capable of a thorough and successful disinfection."

—that defendant in error, by virtue of said ordinance, declared said premises, the building and houses thereon, by reason of infectious diseases therein, to-wit, small-pox, to be a public nuisance, without any authoritative investigation beforehand or the finding of any jury that the same was so infected as to be inimical or a menace to the welfare of the public, and when the same was not then and there incapable of disinfection and was not a nuisance or menace to the public; that defendant in error, without notice to plaintiffs in error, or compensation paid to them, or any finding or award of damages to plaintiffs in error, or

any offer by said city to re-imburse them, proceeded to and did condemn said buildings to be destroyed, etc.; that defendant in error, acting by its servants and officers and by virtue of the authority of said ordinance, entered upon said premises without leave or license and against the will of plaintiffs in error, and without compensation to them, and destroyed the said building and its appurtenances with fire, to the damage of plaintiffs.

The fourth count, in addition to the allegations of the third count, alleges the value of the annual rental on the building to be $600; that it was lawfully erected and maintained for dwelling and tenement house purposes and was not a nuisance nor dangerous to the public health; that it was unnecessarily and arbitrarily condemned and destroyed by the city under said ordinance, without notice to plaintiffs and without legal proceedings first being had or compensation being paid to them, as required by law and the constitution; that the said city, by eminent domain or some other proceeding, should have had the protection of some court or its order before taking and destroying such property, and that it was the duty of said city not to utterly destroy said property, but to undertake to, and to, fumigate and disinfect the same, and save and keep from destruction so much thereof as might be of value or use in the construction of another building. The *ad damnum* was placed at $5000.

To the declaration defendant in error filed a demurrer, which was sustained by the court on January 10, 1908. Plaintiffs in error elected to stand by their declaration, and judgment was entered against them for costs and the suit dismissed. To review the judgment of the circuit court the plaintiffs in error have sued out a writ of error from this court, and it is contended by them that the court erred in sustaining the demurrer and in entering judgment against them.

ARTHUR B. COWING, (E. C. HALL, of counsel,) for plaintiffs in error:

The police power is subject to the paramount authority of the State and Federal constitutions. The exercise must be appropriate and not improperly interfere with personal liberty, invade private right nor deprive the citizen of lawful property. Ill. Const. art. 2, secs. 1, 2, 13; U. S. Const. art. 7, sec. 5; *Railroad Co.* v. *Jacksonville,* 67 Ill. 40; *Lake View* v. *Cemetery Co.* 70 id. 191; *Chicago* v. *O'Brien,* 111 id. 536; *Ritchie* v. *People,* 155 id. 98; *Ruhstrat* v. *People,* 185 id. 142; *People* v. *Steele,* 231 id. 345; *In re Jacobs,* 98 N. Y. 98; *In re Cheesebrough,* 78 id. 232; Cooley's Const. Lim. (6th ed.) 606, 607.

The powers of the city in relation to nuisances and the public health, so far as applicable here, are prescribed by clauses 75, 78 and 84 of section 62, article 5, of the City and Village act.

The plaintiffs' building in this case, lawfully erected, and maintained in disobedience of no existing general law or ordinance relating to nuisances or otherwise, was by special enactment or resolution of the council, avowedly to protect the public health, declared to be a nuisance, condemned to destruction and destroyed, unnecessarily and arbitrarily, and the plaintiffs thereby suffered an unreasonable exaction and sacrifice above and beyond anything the law contemplates the citizen should bear or sustain as a member of the public. They were thus not only deprived of property without due process of law, but it was taken for public use without compensation, in violation of constitutional guaranties, State and Federal. Ill. Const. art. 2, secs. 1, 2, 13; U. S. Const. art. 7, sec. 5; *Nevins* v. *Peoria,* 41 Ill. 502; *Lake View* v. *Cemetery Co.* 70 id. 197; *Chicago* v. *O'Brien,* 111 id. 537; *Hutton* v. *Camden,* 39 N. J. L. 122; *St. Paul* v. *Gilfillan,* 36 Minn. 298; *Miller* v. *Horton,* 152 Mass. 540; *People* v. *Board of Health,* 140 N. Y. 1.

Private property is taken for a public use when it is sacrificed to that use. *Wynehamer* v. *People,* 13 N. Y. 383; *Nevins* v. *Peoria,* 41 Ill. 502; *Chicago* v. *O'Brien,* 111 id. 537; *Pumpelly* v. *Canal Co.* 80 U. S. 177.

The fact of nuisance not being absolutely certain, the city should have the protection of a judgment or order of court for what it does. The question of nuisance should have been ascertained and settled judicially. 1 Dillon on Mun. Corp. (4th ed.) sec. 379; *Teass* v. *St. Albans,* 38 W. Va. 1; *People* v. *Board of Health,* 140 N. Y. 1; *Denver* v. *Mullen,* 7 Colo. 345.

The mere declaration of the local authorities that a structure or thing shall be a nuisance is not conclusive. They cannot condemn arbitrarily and destroy property lawfully erected nor anything erected by lawful authority; and where the power to declare what shall be a nuisance has been expressly conferred, such power is inoperative unless the thing condemned is in reality a nuisance or was created or erected in violation of the ordinance or in defiance of it. 2 Wood on Nuisances, (3d ed.) sec. 744; 1 Dillon on Mun. Corp. (4th ed.) sec. 374; 2 Beach on Public Corp. sec. 1033; Cooley on Torts, (2d ed.) 48, 51; *Laugel* v. *Bushnell,* 197 Ill. 20; *Lake View* v. *Letz,* 44 id. 81; *Chicago* v. *Laflin,* 49 id. 172; *Railroad Co.* v. *Joliet,* 79 id. 44; *Yates* v. *Milwaukee,* 77 U. S. 497; *Denver* v. *Mullen,* 7 Colo. 345; *People* v. *Board of Health,* 140 N. Y. 1; *Everett* v. *Council Bluffs,* 46 Iowa, 66; *Miller* v. *Horton,* 152 Mass. 540.

When the nuisance is not in the building itself but in the use to which it is put, the former cannot be declared a nuisance and destroyed. The cause of offense, only, must be abated. *Nazworthy* v. *Sullivan,* 55 Ill. App. 48; *Chicago* v. *Stock Yards,* 164 Ill. 224; *Dupree* v. *Brunswick,* 82 Ga. 727; *Bank* v. *Sarlls,* 129 Ind. 301; *Evansville* v.

*Miller,* 146 id. 613; 1 Dillon on Mun. Corp. (4th ed.) sec. 378.

While at common law, anything injurious to public health may be deemed a nuisance *per se,* the rule has never been held to warrant the summary destruction of valuable private property used for human habitation or capable of being fitted therefor, on account of infection by contagion among the inmates. Only when the building was entirely unfit for occupancy and incapable of being made suitable for that or other purpose has its destruction, on account of disease or otherwise, been justified; and in all such cases due notice, or its equivalent, was given to the owner, or a hearing afterward, where the exigencies were such as precluded notice beforehand. *Health Department* v. *Dassori,* 21 App. Div. (N. Y.) 348; *Harvey* v. *Dewoody,* 18 Ark. 252; *Lawton* v. *Selma,* 43 Ala. 398; *Meeker* v. *VanRensselaer,* 15 Wend. 397.

When the fact of nuisance is clear, the city, if it exercise the power in an excessive, unnecessary or unreasonable manner, will be liable. The power must be so used as to cause the least possible injury to private right. Under no circumstances, ordinarily, will destruction of useful materials comprising the structure be justified. 2 Wood on Nuisances, (3d ed.) secs. 740, 741; 1 Dillon on Mun. Corp. (4th ed.) secs. 378, 379; *Larson* v. *Furlong,* 50 Wis. 681; *Mark* v. *Bridge Co.* 103 N. Y. 26; *Brightman* v. *Bristol,* 65 Me. 426; *Atlanta* v. *Dooley,* 74 Ga. 702; *Shepard* v. *People,* 40 Mich. 487; *State* v. *Newark,* 34 N. J. L. 264.

If property is destroyed in order to abate an alleged nuisance, in pursuance of an ordinance, the corporation will be held to the same accountability as an individual, if, as a matter of fact, the thing abated was not a nuisance. 1 Am. & Eng. Ency. of Law, (2d ed.) 95, note 3; 2 Wood on Nuisances, (3d ed.) sec. 740; *Yates* v. *Milwaukee,* 77 U. S. 497; *Clark* v. *Syracuse,* 13 Barb. 32; *Orlando* v. *Pragg,* 31 Fla. 111; *Cole* v. *Kegler,* 64 Iowa, 59.

ROBERT W. MARTIN, City Attorney, (T. F. DONOVAN, of counsel,) for defendant in error:

The act of the city council was not in contravention of any Federal or State constitutional provision. *Frazer* v. *Chicago,* 186 Ill. 486; Sedgwick on Const. Law, 435; *Carthage* v. *Frederick,* 122 N. Y. 268; 1 Dillon on Mun. Corp. sec. 212; *Thorp* v. *Rutland,* 27 Vt. 140; *Gundling* v. *Chicago,* 176 Ill. 340; *Chicago* v. *Gunning System,* 214 id. 628.

City councils in cities and boards of trustees in villages shall have power to declare what shall be a nuisance and to abate the same, and to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease. Hurd's Stat. chap. 24, art. 5, secs. 75, 78.

In cases depending upon a variety of circumstances, requiring judgment and discretion on the part of the city authorities in exercising their legislative functions, under the general delegation of power, to define and declare what shall be nuisances, their action under such circumstances is conclusive on the question. *Railroad Co.* v. *Lake View,* 105 Ill. 207; *King* v. *Davenport,* 98 id. 305; *Harmison* v. *Lewiston,* 153 id. 213; *Laugel* v. *Bushnell,* 197 id. 20.

The suppression of disease is a governmental function of the municipality as distinguished from a corporate or private duty. *Frazer* v. *Chicago,* 186 Ill. 486; *Tollefson* v. *Ottawa,* 228 id. 134; *Evans* v. *Kankakee,* 231 id. 223.

The acts of city officers in enforcing regulations which embrace laws and ordinances pertaining to the comfort, safety, health, convenience, etc., of the public are police regulations made in the interest of the public, for which acts the city is not liable. *Evans* v. *Kankakee,* 231 Ill. 223; *Chicago* v. *Williams,* 182 id. 135; *Maximilian* v. *New York,* 62 N. Y. 160; Dillon on Mun. Corp. (3d ed.) secs. 978, 979.

Mr. JUSTICE SCOTT delivered the opinion of the court:

We regard the first and second counts as fatally defective. It is unnecessary to discuss them in view of our conclusions as to the sufficiency of the remaining counts. In what is hereinafter said regarding the *narr.,* reference is had only to the third and fourth counts.

Section 2 of article 2 of the constitution of the State provides that no person shall be deprived of property without due process of law. Plaintiffs in error insist that when that clause is given proper meaning it appears therefrom that the city was without lawful authority to pass the ordinance made a part of the declaration and to do the acts charged by that pleading.

The 75th section of paragraph 62, chapter 24, Hurd's Revised Statutes of 1907, provides that the city council shall have power "to declare what shall be a nuisance and to abate the same; and to impose fines upon parties who may create, continue or suffer nuisances to exist." By the 78th paragraph of the same section the council is authorized to do all acts and make all regulations necessary or expedient for the promotion of health or the suppression of disease. The position of the city is, that it had authority to do everything charged against it by the declaration under and by virtue of these two sections and under and by virtue of its general police power.

Plaintiffs in error first object that the city was without power to pass an ordinance which had application only to the property involved in this suit; that the power given to declare a nuisance must be exercised by an ordinance general in its character, operating uniformly upon all persons and upon all property of the same character within the city. While the precise steps necessary to be taken by the city in declaring a thing to be a nuisance have never been pointed out by this court, we are of opinion that the city, in the exercise of its police power, if the emergency existed, as it appears to have existed from the recitals of the ordinance,

had the power to declare the existence of the nuisance by the ordinance which it passed, provided the location and condition of the building were such that the method ordained was the only one which could in reason be used that would be effective in preventing the spread of the disease. Many cases can readily be imagined in which the city must proceed in a manner exceedingly summary, both to declare and to abate a nuisance, and in such case the passage of an ordinance such as that here involved would seem to be a declaration sufficiently formal.

It is then said that the power of the city to declare what shall be a nuisance is not an arbitrary one. To that proposition there can be no dissent. In the case of *Laugel* v. *City of Bushnell,* 197 Ill. 20, it is said (p. 26): "Nuisances may thus be classified: First, those which in their nature are nuisances *per se* or are so denounced by the common law or by statute; second, those which in their nature are not nuisances but may become so by reason of their locality, surroundings or the manner in which they may be conducted, managed, etc.; third, those which in their nature may be nuisances but as to which there may be honest differences of opinion in impartial minds." It is apparent that if the building in this case was a nuisance it fell within the second classification, and the city had the power to declare it to be a nuisance if it was in fact so. If the conditions recited in the ordinance existed and if the building was so located as that persons in the city could not by the city authorities, in the exercise of reasonable precaution, be excluded from the building or prevented from approaching so near thereunto as to be in danger of contagion therefrom, it would appear that the building was, in fact, a nuisance and that it might lawfully be abated.

It is next insisted that before the property was actually destroyed the owners thereof were entitled to have a day in court, where the question whether the property was, in fact, a nuisance might be adjudicated before the building

was destroyed. In the exercise of the police power the command "so use your own property as not to injure others," and the maxim "the safety of the people is the supreme law," are to be observed and given effect. (*City of Chicago* v. *Gunning System,* 214 Ill. 628.) If in every emergency the owner of the property the destruction of which is deemed necessary must be given a hearing, the exercise of the police power would in many instances be so delayed that serious injury to public health and other public interests would result. In *King* v. *Davenport,* 98 Ill. 305, in considering a like question, the following language was quoted with approval (p. 313): "In the exercise of this [police] power the legislature may not only provide that certain kinds of property (either absolutely or when held in such a manner or under such circumstances as to be injurious, dangerous or noxious,) may be seized and confiscated upon legal process after notice and hearing, but may also, when necessary to insure the public safety, authorize them to be summarily destroyed by the municipal authorities without previous notice to the owner, as in the familiar cases of pulling down buildings to prevent the spreading of a conflagration or the impending fall of the buildings themselves, throwing overboard decaying or infected food, or abating other nuisances dangerous to health."

Plaintiffs in error next argue that even if the city had the power to pass the ordinance and to proceed in the summary manner in which it did, they are entitled to maintain this suit and test the question whether or not the property was, in fact, a nuisance. To this the city first replies that the declaration of the council that the building was a nuisance finally determines that question. The law in this State gives no binding or final effect to the decision of the city council upon this question of fact. On the contrary, this question remains an open one, which may be adjudicated in this suit. *Village of DesPlaines* v. *Poyer,* 123 Ill. 348; *Pearson* v. *Zehr,* 138 id. 48.

Defendant in error then contends that if the building was not, in fact, a nuisance, the acts of the city council in passing the ordinance and destroying the building were, according to the declaration, *ultra vires,* and for such *ultra vires* acts the municipality cannot be held liable. It may be that if the thing which the city council did or expressly directed to be done was wholly beyond the scope of the city's power, as if, for instance, the city council, in the name of the city, should engage in the business of mining coal, and as a result of negligence in conducting the mine some individual should be injured, the doctrine of *ultra vires* would afford a defense to the municipality; but to declare and abate a nuisance is within the scope of the power conferred upon the city, and if the council, in the exercise of that power, destroys or expressly authorizes the destruction of property which, in fact, is not a nuisance, the municipality must be held liable for damages sustained by the owner. (Wood on Nuisances, sec. 740; Dillon on Mun. Corp.—4th ed.—sec. 972.) The city was not justified in destroying this property unless the statement of alleged facts contained in the ordinance was true, and then only if the property was so located and in such condition that the danger to public health therefrom could not be obviated by the use of some reasonable measures less drastic than the absolute destruction of the property.

The judgment of the circuit court will be reversed and the cause will be remanded, with directions to sustain the demurrer as to the first and second counts and to overrule it as to the third and fourth counts of the declaration.

.        *Reversed and remanded, with directions.*