**SOUTH DAKOTA DEPARTMENT OF HEALTH, Plaintiff and Appellee,**

**v.**

**James OWEN and Dwight Owen, Defendants, Third Party Plaintiffs & Appellants,**

**v.**

**Tony HEIM, Third Party Defendant.**

**Nos. 13809, 14218 and 14223.**

Supreme Court of South Dakota.

Argued March 20, 1984.

Decided May 29, 1984.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Laurence J. Zastrow of Carr, Zastrow & Pluimer, Belle Fourche, for defendants and appellants.

FOSHEIM, Chief Justice.

James and Dwight Owen (appellants) dispute a circuit court decision which ordered destruction of their commercial elk herd. The South Dakota Department of Health (Department) appeals a decision ordering it to compensate the Owens for the destruction. On notice of review, appellants challenge the measure of compensation. We reverse and remand.

In May 1981, appellants' veterinarian examined two dead elk from their commercial herd. As a result of that examination the veterinarian suspected the dead elk were infected with tuberculosis. That suspicion was confirmed by a positive laboratory identification of the disease. The South Dakota State Veterinarian then conducted a single cervical skin test for tuberculosis on fifty-three elk. Thirty showed positive reactions. On September 28, 1981, the Department quarantined the elk due to the "problem to ... human population." M. bovis tuberculosis is transmittable to both animals and humans through direct or indirect contact with an infected animal. Indirect contact can come from inhaling the aerosol droplets expelled from the lungs of the infected animals. Twenty-three individuals identified as likely to have been exposed to the herd were requested to undergo tuberculosis testing. Three reacted positively to the test.

On September 30, 1981, the Department commenced a civil action pursuant to SDCL 34–16–6 for a warrant to destroy the elk. The answer of appellants alleged that destruction was not necessary to preserve public health and that SDCL ch. 34–16 did not authorize the Department to bring the

action. Appellants further alleged that destruction would constitute a taking of private property for a public use. They also served and filed a counterclaim praying that, in the event of destruction, they be awarded just compensation for the full and fair market value of the elk. The circuit court ordered destruction and partial compensation.

■ Appellants contend the Department had no authority to bring a civil action under SDCL 34–16–6, which provides:

> Whenever the township board of health thinks it necessary for the preservation of the health of its inhabitants to enter any building, car, truck, automobile, or vessel in the township for the purpose of examining into and destroying, removing, or preventing any nuisance, source of filth, or cause of sickness, and shall be refused such entry, any member of the board may make complaint under oath to a judge of the circuit court for the county, stating the facts in the case so far as he has knowledge thereof.

The Owens correctly argue that only a member of a township board of health is granted authority to bring an action under this statute. Township boards of health were abolished in 1977 by repeal of SDCL ch. 34–6. SL 1977, ch. 190, § 12. Because there are no longer members of township boards of health to make complaint, the repeal of SDCL ch. 34–6 effectively nullified SDCL 34–16–6. It therefore rendered commencement of an action thereunder impossible.

We cannot accept the Department's contention that SDCL 34–1–14(2) permits it to assume the powers of defunct local health boards. That statute grants the Depart-

ment authority "[t]o exercise general supervision over all health officers and local boards of health in the state." That "general supervision" language logically can operate only where there is a health officer or local board to be supervised. It cannot be deemed to grant authority to act in lieu of a nonexistent local board.

■ The demise of the complaint does not extinguish the counterclaim. *McClelland v. Alexander*, 177 Ga.App. 663, 161 S.E.2d 397 (1968); *Seil v. Board of Supervisors of Will County*, 93 Ill.App.2d 1, 234 N.E.2d 826 (1968); *Buckley v. Buckley*, 186 Kan. 365, 350 P.2d 44 (1960); *Southeast Veterinary Hospital, Inc. v. Fingerlin*, 470 P.2d 1006 (Okl.1970); Annot., 48 A.L.R.2d 748, § 2[c] (1956). The trial court adopted separate findings and conclusions in requiring compensation. On notice of review the parties dispute the compensation award.

■ It is the generally accepted rule of law that destruction by health authorities of animals suffering from a contagious disease, where such destruction is necessary to prevent the spread of the disease, does not deprive the owner of property without due process of law.[1] Annot. 18 A.L.R. 67 § II b (1920); Annot., 67 A.L.R. 208 (1930). It is not a taking of property for public use within the meaning of the constitutional provisions requiring compensation for such use. 4 Am.Jur.2d Animals § 35 (1962).

■ Since the elk were not destroyed pursuant to a statute, it amounted to a summary destruction in the exercise of inherent sovereign police power. The term "police power" is not found in the federal or state constitutions, but is considered a grant from the people to their governmental agents. 16A Am.Jur.2d Constitutional

---

1. Article VI, Section 2 of the South Dakota Constitution provides:
   "No person shall be deprived of ... property without due process of law ..."
   Article VI, Section 13 of the South Dakota Constitution provides:
   Private property shall not be taken for public use, or damaged, without just compensation, which will be determined according to legal procedure established by the Legislature

and according to § 6 of this article. No benefit which may accrue to the owner as the result of an improvement made by any private corporation shall be considered in fixing the compensation for property taken or damaged. The fee of land taken for railroad tracks or other highways shall remain in such owners, subject to the use for which it is taken.

Law § 362 (1979). In *City of Rapid City v. Boland*, 271 N.W.2d 60 (S.D.1978), we stated that the power to summarily take or damage property is based on the public necessity of preventing an impending hazard which threatens the lives, safety, or health of the general public. We noted that the public necessity privilege is an extension of every individual's privilege to take whatever steps appear reasonable to prevent the consequences of an imminent public danger. The Department, as an arm of the state, when appropriate, exercises the sovereign's police power.

In *Boland*, we noted that destruction of property such as diseased cattle is a proper summary abatement of a public nuisance and that such an abatement does not necessarily entitle the owner of the property to compensation. We cited *Campoamor v. State Live Stock Sanitary Board*, 136 Fla. 451, 457, 182 So. 277, 280 (1938), which involved a herd of cattle infected with Bangs disease. The court held:

> It is on this theory that summary destruction of diseased animals has been upheld and who knows that we may not be soon finding that the destruction of such animals may be enforced in the interest of the community.
>
> In case of danger from epidemics among domestic animals from Bang's or other communicable diseases, it may be necessary to provide for summary abatement or destruction of diseased animals. Epidemics among domestic animals sometimes become very pernicious and destructive. It would be a strange anomaly to hold that the government was effete and helpless in the face of

circumstances of this kind to take steps or pass laws to meet such emergencies.

> . . . .
>
> The doctrine of due process has not such implication when the life, health, and welfare of man or beast is involved as it has when other tangible property is at stake. In the latter case, the courts have rigidly enforced the requirements as to notice, hearing, factual investigation, and compensation, but in the former case, when epidemics arise or are threatened or when the common good is otherwise in hazard, summary proceedings may be authorized and they will be upheld so long as they go no further than are reasonably necessary to meet the situation.

182 So. 279, 280. In *Boland* we held that if there is no notice and hearing before seizure and destruction of the property, the owner is entitled to a hearing after the destruction to determine whether the property was in fact a nuisance and whether the destruction was necessary to abate the nuisance. The compensation issue rests on appellants' counterclaim. In regard to that counterclaim, the court specifically found: "The elk were destroyed for the control of bovine tuberculosis and to protect the health and welfare of the people of the State of South Dakota."

That finding constituted a determination that the diseased elk herd was a public nuisance within the meaning of SDCL 21–10–1 and 21–10–3.[2] This leaves unresolved the compensation issue which depends on whether destruction of the elk herd was necessary to abate the nuisance. *See Boland*, 271 N.W.2d at 68. Compensation is required unless the destruction was

---

**2.** SDCL 21–10–1 provides:

A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

(1) Annoys, injures, or endangers the comfort, repose, health, or safety of others;

(2) Offends decency;

(3) Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, any lake or navigable river, bay, stream, canal, or basin, or any public park, square, street, or highway;

(4) In any way renders other persons insecure in life, or in the use of property.

SDCL 21–10–3 provides:

A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal. Every other nuisance is private.

a summary abatement of a nuisance imminently hazardous to the public health, safety, or welfare.[3] *Id.*

There is evidence that a remedy other than total destruction was a "method of choice," whereby the reacting animals are destroyed, with the remaining animals quarantined. Periodically the quarantined animals are retested with any newly reacting animals destroyed. The court may find, however, that total destruction was necessary to avoid the risk of quarantined animals escaping and exposing the disease to humans and animals. The testimony indicates the elk had a value for antler production. If it was not necessary to kill all the elk, then the elk that were unnecessarily destroyed were taken for a public use in the constitutional sense for which appellants are entitled to compensation. *Id., Sings v. City of Joliet,* 237 Ill. 300, 86 N.E. 663 (1908); 58 Am.Jur.2d Nuisances, §§ 205, 208 (1971).

We remand with direction to resolve that issue. It therefore is necessary to discuss the proper measure of damage in the event the court finds some elk were taken for a public use.

█ The circuit court attempted to calculate compensation on the basis of a statute which permits compensation of one-third the difference between the appraised value of registered breeding cattle infected with bovine tuberculosis and their net salvage value after slaughter. SDCL 40–6–22. This formula is clearly inapplicable and may not be relied on either as authority or as a method of calculation for compensation for destruction of diseased elk. SDCL 40–6–23 expressly requires that compensation under SDCL 40–6–22 shall be paid only for sexually entire registered bulls and female breeding cattle. The legislature has neither permitted nor extended that compensation formula for destruction of other animals. If compensation is found appro-

priate, it is the difference between the fair market value of the unnecessarily destroyed elk before the taking and the fair market value of what remains (antlers) after taking. *Basin Elec. Power Co-op v. Poindexter,* 305 N.W.2d 46 (S.D.1981).

Reversed.

DUNN, MORGAN and HENDERSON, JJ., concur.

WOLLMAN, J., concurs in part and dissents in part.

WOLLMAN, Justice (dissenting in part, concurring in part).

As I read the record, there is no need to remand on the issue whether the Owens are entitled to compensation for the elk that were destroyed by the State because that issue has already been decided by the trial court. On May 2, 1983, the trial court entered findings of fact and conclusions of law with respect to the matter of compensation. Finding of Fact IV states that: "The South Dakota Department of Health has damaged the property of the Owens for public use without just compensation." Conclusion of Law II states that: "The destruction of the Owens' elk is a taking of private property for public use amounting to condemnation for which the Owens are entitled to just compensation." This finding and this conclusion reflects the trial court's decision, as set forth in its supplemental memorandum opinion of March 15, 1982, that

> the Court has condemned the property of Owen's for the health and welfare of the People of the State of South Dakota. Based on the recent Supreme Court case of Boland, et al, vs. Rapid City vs. State, this condemnation, negative of inverse as it may be, requires the compensation of the Owen's for the loss of the diseased Elk.

---

**3.** The trial court's conclusion that compensation was required is not supported by a finding which resolves the precise issue necessary to permit compensation. The finding of fact simply states that the Department of Health damaged the property for public use without just

compensation. It does not find whether destruction of the property was a summary abatement of a nuisance imminently hazardous to the public health, safety, or welfare. Entitlement to compensation calls for such specific finding.

Now it very well may be, as the State pointed out during oral argument in this case, that there is an inconsistency between the trial court's findings of fact and conclusions of law with respect to the necessity of the destruction of the elk and its subsequent findings of fact and conclusions of law regarding the award of compensation, but it is quite clear from the record that the trial judge was aware of our decision in *Boland v. City of Rapid City,* 315 N.W.2d 496 (S.D.1982), which was handed down on February 3, 1982, and that he based his decision to award compensation on our decision in the *Boland* case. That being the state of the record, I see no point in remanding the case to the trial court for a finding that has already been made.

I agree with the majority opinion that the case must be remanded for a redetermination of the amount of the compensation to be awarded for the elk that were destroyed.