**SOUTH DAKOTA DEPARTMENT OF HEALTH, Plaintiff and Appellee,**

v.

**Tony HEIM, Defendant and Appellant.**

**No. 14464.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 11, 1984.

Decided Nov. 7, 1984.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

James M. Cremer of Bantz, Gosch, Cremer, Peterson & Oliver, Aberdeen, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/FACTS

This is an appeal from a judgment of December 21, 1983, after trial to the court, denying compensation from the State of South Dakota for the destruction of a diseased elk herd. We affirm.

A skin test administered to appellant's elk in September 1981, indicated the presence of bovine tuberculosis. The animals were placed under quarantine and on October 2, 1981, a Complaint for Abatement of a Public Health Hazard was filed.

A similar suit was pending in the Eighth Judicial Circuit concerning the elk herd of James and Dwight Owen, which had been purchased from appellant. On December 8, 1981, the litigants herein stipulated that they would be bound by the decision of Judge Tschetter, Eighth Judicial Circuit, with regard to Owen's herd. The Heim animals remained in quarantine during this period. No further action was taken.

Judge Tschetter's decision to destroy the Owen's elk came on May 13, 1982. This order was subsequently amended on August 18, 1982. A warrant to destroy appellant's herd was issued on August 19, 1982, by Circuit Judge Vernon Evans, Third Judicial Circuit. Appellant's elk were again administered the skin test. Those reacting positively were destroyed. Appellant brought action for compensation of the destroyed elk, claiming the State acted pursuant to its power of eminent domain.

## ISSUE

DID THE STATE DESTROY THE HEIM ELK HERD PURSUANT TO ITS POWER OF EMINENT DOMAIN?

## DECISION

In *City of Rapid City v. Boland,* 271 N.W.2d 60 (S.D.1978), we established certain rules concerning the duty of the

government to compensate owners of property damaged or destroyed by the government.

■ From the general rule requiring compensation, we delineated the following specific exceptions:

There are three important exceptions to the requirement of compensation where, without the owner's consent, private property is intentionally, purposefully or deliberately taken or damaged for the public use, benefit or convenience. They are the taking or destruction of property (1) during actual warfare; (2) to prevent an imminent public catastrophe; and (3) to abate a public nuisance. In each instance, the power to "take or damage" without compensation is based upon the public necessity of preventing an impending hazard which threatens the lives, safety, or health of the general public.

The public necessity privilege is an extension of every individual's privilege to take whatever steps appear reasonable to prevent an imminent public disaster.

*Boland*, 271 N.W.2d at 65 (footnote omitted). Based upon the record herein, it is clear that the destruction of appellant's diseased animals falls within the third exception to compensation found in *Boland.*

■ This case is also governed by our holding in *South Dakota Dep't of Health v. Owen*, 350 N.W.2d 48 (S.D.1984). As stated in *Owen*, 350 N.W.2d at 50,

[i]t is the generally accepted rule of law that destruction by health authorities of animals suffering from a contagious disease, where such destruction is necessary to prevent the spread of the disease, does not deprive the owner of property without due process of law. It is not a taking of property for public use within the meaning of the constitutional provisions requiring compensation for such use. (Footnote and citations omitted.)

■ Here, the trial court specifically found:

3. The hazard to human health, welfare and safety created by the Defendant's elk herd was of sufficient gravity to require its abatement for the protection of the general public of the State of South Dakota.

4. The form of abatement ... was through the destruction of the animals which had a positive reaction to the tuberculosis skin test performed by the Department.

5. The only adequate and recognized method of controlling Mycobacterium bovis in animals is through the destruction of the animals that have a positive reaction to the tuberculosis skin test.

These findings constituted a determination that the diseased elk herd was a public nuisance. *Owen*, 350 N.W.2d 48. Conclusions of Law numbers 2 and 3 provided:

2. The Defendant's elk, as a "cause of sickness," within the meaning of SDCL 34–16–7, were a public nuisance.

3. The Defendant's elk, which were a "cause of sickness," and a public nuisance, presented a continuing threat to human health and safety and were imminently hazardous to the public health, safety and welfare.

We cannot hold that this was clearly erroneous.

Appellant concedes in its reply brief "that the only effective and economical means of eliminating tuberculosis in an animal herd is to destroy the entire herd." As destruction of the herd was a summary abatement of a nuisance imminently hazardous to the public health, safety, or welfare, appellant is not entitled to compensation. *See Owen*, 350 N.W.2d 48.

■ Appellant insists that the one-year lapse between the discovery of the disease and its abatement indicates these animals were not a public nuisance and were taken under the State's power of eminent domain. The record indicates, however, that the time lapse was due to continuances urged and agreed to by appellant and not to any lack of diligence on the part of the State.

We need not reach just compensation, incidental damages, or consequential damages due to our basic holding herein.

Affirmed.

All the Justices concur.

WUEST, Circuit Judge, Acting as Supreme Court Justice, participating.