BARTON-BARNES, INC., Respondent, v STATE OF NEW YORK, Appellant.

Third Department, May 7, 1992

---

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Patrick Barnett-Mulligan* and *Peter G. Crary* of counsel), for appellant.

*Yetter, Salbowitz, Hester & Gartell (Alan M. Zalbowitz* of counsel), for respondent.

## OPINION OF THE COURT

MAHONEY, J.

In 1980, Wesley Pawlowski leased a car from Kresge Leasing Corporation. During the early morning hours of February 5, 1981, when the car was parked in the basement of a State office building in the City of Binghamton, Broome County, a fire erupted in a transformer which contained the chemical pyranyl. The heat generated by the fire converted the pyranyl into polychlorinated biphenyls (PCBs), dibenzofurans (furans) and dibenzodioxins (dioxins) which spread throughout the building. All of these chemicals are considered toxic at low levels. Initial testing performed on the car on February 18, 1981 by State officials uncovered the presence of PCB contamination* in the front seat and on the hood and the State notified Pawlowski that it was being held for decontamination. While it was believed that several attempts were made at decontamination, the record is unclear as to the dates such cleaning occurred, who attempted it and, with the exception of one attempt at decontamination with the cleaner Lestoil, what materials or methods were used. Retests of the car conducted in March and April 1981 showed decreased levels of PCBs but that some contamination remained. Apparently no further action was taken until October 1, 1981 when Pawlowski received a letter from the State Office of General Services advising that "State personnel charged with disposition in this matter" had determined not to return the vehicle. Ultimately, the vehicle was destroyed by or at the direction of State officials. It was unclear who made the determination to destroy the vehicle or the rationale for it.

Thereafter, Kresge transferred title to the car to claimant, its insurer, for fair market value. Claimant, in turn, commenced this action seeking damages for conversion. In its answer, the State asserted, *inter alia,* that its actions were privileged under the common-law doctrine of public necessity because the car contained toxic contaminants. The Court of Claims concluded after trial that the State bore the burden of proving that reasonable procedures were used to clean the car and that the ultimate decision to terminate decontamination attempts and dispose of the vehicle was reasonable in order for its acts to fall within the ambit of the privilege. Finding

---

* Testing for the presence of furans and dioxins was not performed due to the expense involved. The State assumed that because PCB contamination was present, the car was also contaminated by furans and dioxins.

that the evidence submitted failed to satisfy either of these showings, the court granted judgment for claimant. The State appeals.

The doctrine of public necessity operates to avoid liability for what would otherwise constitute an actionable conversion "if the act is or is reasonably believed to be necessary for the purpose of avoiding a public disaster" (Restatement [Second] of Torts § 262; *cf., Russell v Mayor of City of N. Y.,* 2 Denio 461). Ordinarily, invocation of the doctrine requires only a showing that the chattel itself has become dangerous and that intervention is necessary *(see, South Dakota Dept. of Health v Heim,* 357 NW2d 522 [SD]); there is no preliminary requirement that attempts be made to eradicate the condition giving rise to the threatened public peril prior to effecting the actual conversion *(cf.,* Prosser and Keeton, Torts § 24, at 145-148 [5th ed]). However, in situations such as the one herein where, following an initial admittedly privileged confiscation, the converter reasonably believes that an alternative less extreme than actual destruction of the chattel may suffice to eliminate the public threat and undertakes such measures to rid it of the pestilence with the view toward ultimately restoring it to its rightful owner, before the converter can rely upon the public necessity doctrine to justify ultimate destruction of the chattel it must demonstrate that reasonable efforts, albeit unsuccessful, were made at eradication, thus rendering destruction reasonably necessary *(cf.,* Restatement [Second] of Torts § 262, comment *f;* § 196, comment *e;* Prosser and Keeton, Torts § 24, at 146-147 [5th ed]).

We agree with the Court of Claims that the evidence presented falls woefully short of establishing that reasonable efforts were made to eradicate the toxic contamination of this car. The State was able to provide no details of the cleaning methods used other than the fact that on one occasion a common household cleaner was used. Moreover, because at least some cleaning was attempted and it had the effect of reducing the degree of contamination, the testimony of the State's expert that *no* amount of cleaning or scrubbing could render the vehicle safe because of the many intricate surfaces on the car, standing alone, is in our view insufficient to satisfy its burden of proof of the doctrine's applicability.

WEISS, P. J., MIKOLL, LEVINE and CREW III, JJ., concur.

Ordered that the judgment is affirmed, with costs.