OPINION OF THE COURT
Francis T. Collins, J.
Movant seeks an order pursuant to Court of Claims Act § 10 (6) permitting him to serve and file a late claim.
Value-Added Communications, Inc. (VAC) is a Texas corporation which entered into a telephone services contract with the New York State Department of Correctional Services (DOCS) whereby VAC provided telephone services for inmates as part of the defendant’s Inmate Call Home Program. Pursuant to the agreement, VAC was required to pay DOCS commissions on the gross revenues generated by collect calls and a penalty of
l 1/2% on those commissions not paid by the 10th day of each month. Additionally, savings resulting from DOCS’ long-term discount agreement with the New York Telephone Company (NYNEX) were to be used for a telephone infrastructure improvement fund.
On October 10, 1995, VAC filed a voluntary petition in the United States Bankruptcy Court for the Northern District of Texas under chapter 11 of the Bankruptcy Code (11 USC). Within the 90-day period preceding the filing of the petition, VAC sent three checks to DOCS totaling $58,303.45 to pay for penalty charges on commissions payments. While aware of the bankruptcy proceeding, DOCS demanded payment to NYNEX *339 of savings accrued under the contract. Postpetition, VAC made three payments to or for the benefit of DOCS totaling $488,584.52.
Movant was appointed by the Bankruptcy Court as trustee of the estate of VAC and on June 2, 1997 commenced an adversary proceeding against DOCS in the Bankruptcy Court alleging that the prepetition payments to DOCS were avoidable preferential transfers under section 547 of the Bankruptcy Code (11 USC), and the postpetition payments were avoidable transfers under 11 USC § 549. The trustee sought a judgment avoiding the prepetition and postpetition payments and directing DOCS to pay the money to the trustee with interest.
On July 11, 1997, DOCS served a motion to dismiss the adversary proceeding in Bankruptcy Court upon the ground that the court lacked subject matter jurisdiction in that the Eleventh Amendment of the United States Constitution precluded suit in Federal court against a State agency unless the State had waived its sovereign immunity, which New York had not done. In particular, DOCS argued that section 106 (a) of the Bankruptcy Code is unconstitutional pursuant to the decision of the United States Supreme Court in the case of Seminole Tribe v Florida (517 US 44). Section 106 (a) of the Bankruptcy Code provides, in pertinent part, that
“[n] otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
“(1) Sections * * * 547 * * * 549, 550”.
On September 26, 1997, the trustee filed claim No. 97047 containing five causes of action seeking the return of the prepetition and postpetition payments. The claim was served upon the Attorney-General on September 29, 1997 by certified mail, return receipt requested. Out of what movant’s counsel describes as “an abundance of caution”, this motion for permission to serve a late claim was brought on by a notice of motion dated October 8, 1997. The State has submitted a memorandum of law in opposition to the motion arguing that the Court of Claims lacks subject matter jurisdiction over the proposed claim.
On September 10, 1997, a United States Bankruptcy Judge in the United States Bankruptcy Court for the Northern District of Texas issued a memorandum opinion and order denying DOCS’ dismissal motion upon the ground that it had *340 waived its sovereign immunity by filing a proof of claim for fees allegedly due it pursuant to the telephone services contract. Both parties agree that the ruling of the Bankruptcy Judge will be pursued to the Fifth Circuit Court of Appeals, a process that will take many months.
Subdivision (6) of section 10 of the Court of Claims Act permits this court, if the applicable Statute of Limitations set forth in CPLR article 2 has not expired, to allow the filing of a late claim upon consideration of the following factors: “whether the delay in filing the claim was excusable; whether the state had notice of the essential facts constituting the claim; whether the state had an opportunity to investigate the circumstances underlying the claim; whether the claim appears to be meritorious; whether the failure to file or serve upon the attorney general a timely claim or to serve upon the attorney general a notice of intention resulted in substantial prejudice to the state; and whether the claimant has any other available remedy”. This court has broad discretion in deciding a motion to permit the late filing of a claim (Ledet v State of New York, 207 AD2d 965), and the statutory factors are not exhaustive or one factor controlling (Matter of Gavigan v State of New York, 176 AD2d 1117). The most important factor is whether the potential claim has merit, as it would be a futile exercise to permit litigation of a clearly baseless lawsuit (Savino v State of New York, 199 AD2d 254).
The first issue for resolution is whether the motion has been made within the time limitations set forth in CPLR article 2 as to each cause of action set forth in the proposed claim. The proposed claim contains the following causes of action: wrongful appropriation of personal property of the bankruptcy estate; money had and received; breach of a contract implied in law; commission by the defendant of an unnamed tort against the estate; and that the transfers are avoidable under the Bankruptcy Code.
The trustee argues that claim No. 97047 is timely because the applicable Statute of Limitations was tolled by section 108 of the Bankruptcy Code and extended two years from the petition filing date of October 10, 1995. Defendant’s opposition papers are silent upon the timeliness issue. The trustee’s position is correct with respect to the fifth cause of action premised upon a violation of the Bankruptcy Code in that a Federal cause of action sued upon in this court carries with it the applicable Federal Statute of Limitations and tolling provisions (Ahern v State of New York, 174 Misc 2d 123). Pursuant to 11 *341 USC § 108 the fifth cause of action contained, in claim No. 97047 was timely served and filed and the relief requested by this motion with regard to that cause of action is moot. Whether the Court of Claims has subject matter jurisdiction of a claim under the Bankruptcy Code to set aside an avoidable preference will be left for resolution by motion practice in claim No. 97047.
The trustee’s position that the first four causes of action set forth in claim No. 97047 are timely due to the Federal tolling provision is not correct as those causes of action arise under State law. While the appropriate Federal Statute of Limitations will be applied to a Federal cause of action, it is equally well settled that the appropriate Statute of Limitations set forth in CPLR article 2 will be applied to a cause of action under State law (Baker v Board of Educ., 70 NY2d 314, 320). It may well be determined upon a dismissal motion made in claim No. 97047 that the first four causes of action contained in that claim were not timely commenced pursuant to Court of Claims Act § 10. Be that as it may, the first task presented by this motion is to determine which Statutes of Limitations set forth in CPLR article 2 apply to the first four causes of action contained in the proposed claim.
The six-year Statute of Limitations set forth in CPLR 213 applies to a cause of action for a contract implied in law (Gold Sun Shipping v Ionian Transp., 245 AD2d 420 [2d Dept, Dec. 15, 1997]), money had and received (Board of Educ. v Jones, 205 AD2d 486), and appropriation of personal property (Williamsburg Candy & Tobacco v State of New York, 106 Misc 2d 728). Clearly, the motion for permission to serve a late claim has been brought within the applicable CPLR article 2 time period with respect to the first, second and third causes of action set forth in the proposed claim. The fourth cause of action refers to an unnamed tort, which movant’s counsel could not identify during oral argument. However, a conversion action is available to recover specifically identifiable money in the unauthorized possession of another (Key Bank v Grossi, 227 AD2d 841, 843). A conversion claim is governed by the three-year Statute of Limitations set forth in CPLR 214, and the motion as to that cause of action is timely.
As to the prepetition payments, the foregoing causes of action accrued at the time of the filing of the petition in bankruptcy as that is the point at which the State’s retention of the funds arguably became unauthorized pursuant to the Bankruptcy Code. The causes of action addressed to the postpetition *342 payments accrued at the time when the payments were made. Movant did not timely serve and file a claim or serve a notice of intention within six months of the accrual of the appropriation or implied contract causes of action (Court of Claims Act § 10 [4]), or within 90 days of the accrual of the conversion cause of action (Court of Claims Act § 10 [3-b]), and the issue distills to whether he should now be permitted to do so.
The excuse advanced for the delay in filing is that until DOCS made its dismissal motion in the Bankruptcy Court on July 11, 1997 movant was of the reasonable belief that there was no need to pursue a claim in this court as the Bankruptcy Court had jurisdiction pursuant to 11 USC § 106. The excuse is valid. Until DOCS asserted its constitutional challenge against 11 USC § 106 the trustee was justified in relying upon a duly enacted Federal statute.
The intertwined issues of notice, opportunity to investigate and prejudice will be considered together. Exhibit G to the affirmation of movant’s counsel consists of letters to VAC from management employees of DOCS demanding payment and disclosing that those management personnel had knowledge of the bankruptcy proceeding. Moreover, the October 18, 1995 letter to VAC from G. Ronald Courington, the DOCS Director of Management Information Services, discloses that Mr. Courington had considered whether continued payments from VAC were appropriate under the bankruptcy filing. A copy of that letter was sent by Mr. Courington to DOCS’ counsel. In the court’s view, the State had prompt notice of the payments and bankruptcy proceeding, had the opportunity to investigate and will not be prejudiced if the late claim is permitted.
Turning to the potential merit of the proposed claim, the State’s sole argument in opposition to the motion is that the Court of Claims lacks subject matter jurisdiction because the movant’s alleged right to repayment derives solely from the Bankruptcy Code. During oral argument defense counsel took the position that a Federal statute cannot give rise to a common-law cause of action within the subject matter jurisdiction of the Court of Claims. The Court of Appeals disagrees. In the case of Parsa v State of New York (64 NY2d 143) the claimant was a physician seeking to recover from the State money allegedly owed to him pursuant to the Federal Medicare law. The Court of Claims dismissed the claim ruling that the court lacked jurisdiction to adjudicate a claim for money had and received. The Appellate Division reversed (100 AD2d 899). On further appeal, the Court of Appeals held that the Court of *343 Claims has subject matter jurisdiction to determine a claim for money had and received even if the right to the money is derived from a Federal statute, but that under the particular facts of the Parsa case, Dr. Parsa could not establish that the State was wrongfully withholding sums to which he was entitled under the Federal statute. The Parsa holding was explained by Judge Margolis in the case of Rye Psychiatric Hosp. Ctr. v State of New York (145 Misc 2d 706, 709) as follows: “In Parsa v State of New York (64 NY2d 143), the Court of Appeals held that the Court of Claims would have jurisdiction to hear a properly pleaded claim for reimbursement of Medicare moneys withheld by the State in alleged violation of a governing Federal statute.”
Thus, this court has subject matter jurisdiction to adjudicate a claim against the State upon a money had and received theory where the claimant’s alleged right to the money derives from a Federal statute. That is precisely the fact pattern presented by this litigation. The trustee asserts that under the Bankruptcy Code he is entitled to set aside the prepetition and postpetition monetary transfers to the State as avoidable preferences. The Parsa holding permits the trustee to use common-law causes of action such as money had and received to recover the payments. Parsa (supra) has also been interpreted as holding that the Court of Claims has subject matter jurisdiction of a quasi contract cause of action for unjust enrichment (Sarbro IX v State of N. Y. Off. of Gen. Servs., 229 AD2d 910, 911). Finally, the Court of Claims has subject matter jurisdiction of a conversion action (see, Barton-Barnes, Inc. v State of New York, 180 AD2d 4) and a claim for wrongful appropriation of personal property (Williamsburg Candy & Tobacco v State of New York, 106 Misc 2d 728, supra).
Having determined that this court has subject matter jurisdiction of the first four causes of action set forth in the proposed claim, the inquiry is whether movant has demonstrated potential merit. The first cause of action asserting that “the defendant has wrongfully appropriated the personal property of the Estate” is an attempt to come within the language of Court of Claims Act § 9 (2) which gives this court the jurisdiction to hear and determine any claim “against the state for the appropriation of any real or personal property”. The statutory language is designed to provide citizens a forum for enforcement of section 7 (a) of article I of the New York Constitution which provides, in pertinent part, that “[p]rivate property shall not be taken for public use without just compensa *344 tion”. The intent of the statute is to provide a means of recovering money damages when the State, through its eminent domain power, appropriates property. In order for a compensable loss to occur under the power of eminent domain a “taking” of property must occur. “The appropriation of money may not be viewed as a permanent physical occupation of property and thus may not constitute a taking, as money, unlike real or personal property, is fungible” (26 Am Jur 2d, Eminent Domain, § 143). As the facts alleged in the proposed claim establish that the wrong charged is the retention of money there has been no taking of property so as to give rise to a potentially meritorious appropriation cause of action.
Turning to the second cause of action in the proposed claim for money had and received, “the essential elements for this cause of action are that ‘(1) the defendant received money belonging to [the claimant], (2) the defendant benefited from receipt of the money, and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money* ” (Matter of Witbeck, 245 AD2d 848, 850 [3d Dept, Dec. 18, 1997]). Movant has pleaded those elements in that it is alleged that DOCS received money belonging to the estate the trustee is administering, DOCS has benefited from the receipt of the money, and under principles of equity and good conscience should not be allowed to keep the money to the detriment of all of VAC’s other general creditors. The money had and received cause of action has potential merit, as do the causes of action for unjust enrichment and conversion.
As to the final factor, if DOCS prevails upon its Eleventh Amendment defense, the Court of Claims will be the only forum available in which movant can pursue his claim. Furthermore, if the waiver of sovereign immunity provision of the Bankruptcy Code is determined to be unconstitutional pursuant to the Seminole Tribe case (supra), public policy requires that there be some forum in which claims of this nature against States and municipalities can be adjudicated. Consideration of the foregoing factors leads the court to exercise its discretion to permit the filing of a late claim asserting the causes of action set forth in counts two, three and four of the proposed claim. At some appropriate juncture, a motion should be made by one of the parties to consolidate the claim that the court is now going to permit to be served and filed with claim No. 97047.
The application of movant for an order pursuant to Court of Claims Act § 10 (6) permitting it to serve and file a late claim *345 is granted to the extent of permitting the service and filing of a claim containing the causes of action set forth in counts two, three and four of the proposed late claim, upon the condition that the service and filing take place within 45 days of the date of the filing of this decision and order.